ESTATE OF HELEN M. NOVOTNY, DECEASED, GUSTAV C. NOVOTNY, PERSONAL REPRESENTATIVE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 35456-87.          Filed July 11, 1989.

*Sheldon H. Braiterman,* for the petitioner.
*Agnes Gormley,* for the respondent.

COLVIN, *Judge:* This case involves the estate tax marital deduction and the qualified terminable interest property (QTIP) rule.

The sole issue to be decided is whether a property interest, passed by Helen Novotny's (decedent) will to her surviving spouse is a qualified terminable interest as defined by section 2056(b)(7)(B);[1] more particularly, whether a marital deduction is available under the QTIP rule where

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and as in effect at the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

certain limitations in the will would have applied independently to the surviving spouse even if not stated in the will.

As discussed below, we find that decedent transferred all of her interest in the property to her surviving spouse for life, subject only to limits which were substantially the same as limits imposed on decedent and her surviving spouse by a promissory note and deed of trust, and by Maryland law. We also find that the surviving spouse was subject to those limits regardless of their inclusion in decedent's will. We believe that the conditional bequest language does not bar eligibility for the qualified terminable interest property rule. Accordingly, we hold that the surviving spouse's interest in real property is a qualified terminable interest and petitioner may take the marital deduction for the property.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and related exhibits are incorporated herein by this reference.

Petitioner is the Estate of Helen M. Novotny. Decedent was a Maryland resident when she died on November 10, 1983. At her death, she had been married to her husband, Gustav C. Novotny, for about 30 years. All events described herein occurred in Maryland.

In her name alone, Helen Novotny purchased a large house on nearly 13 acres of land (the property) in St. Michaels, Talbot County, on November 6, 1979. The purchase price was $215,000. The conveyance of the property was evidenced by a simple individual grantor deed. Helen Novotny financed the purchase by borrowing $110,000 from a financial institution (lender). To secure the loan, Helen and Gustav Novotny signed a promissory note and a purchase money deed of trust. Although Gustav Novotny was not an owner of the subject property, he was an equal signer and obligor with Helen on the deed of trust and the note.

The deed of trust provided in pertinent part:

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest. Borrower shall promptly pay when due the principal of and interest on the indebtedness evidenced by the Note, prepayment and late charges as provided in the Note, and the principal of and interest on any Future Advances secured by this Deed of Trust.

2. Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly installments of principal and interest are payable under the Note, until the Note is paid in full * * *

3. Application of Payments. * * *

4. Charges; Liens. Borrower shall pay all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any, in the manner provided under paragraph 2 hereof or, if not paid in such manner, by Borrower making payment, when due, directly to the payee thereof. * * *

5. Hazard Insurance. * * *

6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments. Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property * * * .

7. Protection of Lender's Security.

Helen Novotny's will was prepared by an attorney who is a member of the Maryland bar and well-practiced in real estate law. Helen Novotny provided in her will as follows:

it being my intention that the devise * * * shall be a devise of my net interest in said real estate, as follows:

(i) To my husband, GUSTAV C. NOVOTNY, for all of his natural life, provided however, that the devise of said life estate shall terminate in the event the said GUSTAV C. NOVOTNY fails to pay the expenses in connection with the property, including but not limited to real estate taxes, mortgage payments, maintainance [sic] expenses, and repairs.

(ii) Upon the death of my husband, GUSTAV C. NOVOTNY, or the earlier termination of his life estate, then said real property shall pass to my daughter, MARY ANN LEITCH, her personal representatives, heirs and assigns.

Decedent died on November 10, 1983. On August 7, 1984, an estate tax return was filed in which petitioner elected to treat decedent's interest in the residence which was bequeathed to Gustav, her surviving spouse, as qualified terminable interest property qualifying for the marital deduction under section 2056(b)(7). Decedent's qualified terminable interest property election was properly made.

By deed dated September 18, 1985, the property was conveyed by Gustav Novotny as personal representative of decedent's estate to Gustav for his life, remainder to Mary Ann Leitch, daughter of Gustav and Helen Novotny. The deed conveying the property to Gustav included only the unconditional life estate without language concerning his obligations. An attorney drafted both the will and the deed dated September 18, 1985, without the conditions set forth in the deed of trust which Helen and Gustav Novotny had signed in 1979. He considered specifying a condition or restriction in a deed which was already imposed by law to be superfluous drafting because deeds are subject to prior recorded liens in Maryland.

Gustav Novotny and Mary Ann Leitch sold the property in March 1987. They divided the proceeds on an actuarial basis. Gustav died in September 1987.

By statutory notice dated July 30, 1987, respondent determined a deficiency of $47,574.72 in the estate tax due from petitioner. The notice of deficiency stated, "the surviving spouse interest * * * [in the property] was not a qualified terminable interest property because of the express condition subsequent contained in the decedants [sic] will, which could terminate the life estate created prior to his death." A petition for redetermination of the deficiency was timely filed in this Court.

OPINION

The sole issue to be decided is whether a marital deduction is available where the will provided the surviving spouse a life estate subject to no conditions other than those already imposed on decedent and her surviving spouse under a deed of trust and by State law. We hold that the property is qualified terminable interest property under section 2056(b)(7). Accordingly, the estate is entitled to the marital deduction with respect to the property.

*Marital Deduction and Terminable Interest Rule*

We begin by examining the marital deduction rules. A marital deduction has been provided since 1948. Generally, a marital deduction may be allowed for property that passes from the decedent to the surviving spouse, to the extent

that it is includable in the gross estate of the predeceasing spouse. Sec. 2056(a). The marital deduction allows a deduction from the estate of a predeceasing spouse if property passes to the surviving spouse, subject to various restrictions and limits. To the extent it applies, the marital deduction results in property in a marital unit being subject to estate tax once, not twice.

One limitation applicable to the marital deduction is the "terminable interest rule." The terminable interest rule, first enacted in 1948, helps ensure that marital property does not escape the estate tax of both spouses. The purpose of the rule, generally speaking, is to deny eligibility for the marital deduction if the predeceasing spouse structures the surviving spouse's interest to avoid estate tax at the death of the surviving spouse.

Terminable interest property exists where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, the interest will terminate or fail. Sec. 2056(b)(1). Thus, beginning in 1948, a life estate has been a terminable interest and no deduction has generally been allowed for a terminable interest in property passing to the surviving spouse. Sec. 2056(b)(1); *Allen v. United States,* 359 F.2d 151 (2d Cir. 1966); *Estate of Elson v. Commissioner,* 28 T.C. 442 (1957).

*Qualified Terminable Interest Property* (QTIP)

An exception to the general terminable interest rule is qualified terminable interest property under section 2056(b)(7)(B), enacted in 1981. If property is QTIP property, the marital deduction may be available. The issue before us is whether the subject property is QTIP property.

Three requirements must be met for terminable interest property to be QTIP property: (1) The property passes from the decedent; (2) the surviving spouse has a qualifying income interest for life in the property; and (3) a proper election has been made. Sec. 2056(b)(7), added by sec. 403(d)(1), Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 357. In this case, the parties agree that the first and third requirements are met. The only question is whether the surviving spouse has a qualifying income interest for life.

A qualifying income interest for life has two requirements: (1) The surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, or has a usufruct interest for life in the property; and (2) no person has a power to appoint any part of the property to any person other than the surviving spouse. Sec. 2056(b)(7)(B)(ii).

There is no issue involving a power of appointment in this case. Accordingly, the remaining issue is whether the surviving spouse is entitled to all of the income from the property during his life, or has a usufruct interest for life in the property. If so, the subject property is QTIP property and qualifies for the marital deduction.

The language, "or has a usufruct interest for life in the property;" was not contained in the QTIP rule as enacted in 1981. It was added in 1984, retroactive to 1981. Sec. 1027, Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, 1031.

As explained in the conference report, the usufruct addition to the QTIP rule was made because, under the Louisiana Civil Code, if a surviving spouse receives a usufruct interest created by will, the interest generally is comparable to a common-law life estate. The conference report states that it was previously unclear whether certain usufruct interests qualified for the marital deduction, and that this ambiguity should be resolved to allow estates of Louisiana decedents to receive comparable QTIP benefits. H. Rept. 98-861 (Conf.) 1239 (1984), 1984-3 C.B. (Vol. 2) 493 to accompany H.R. 4170 (Pub. L. 98-369).

"Usufruct" is not defined in the Internal Revenue Code. This Court has defined it as "The right of enjoying a thing, the property of which is vested in another, and to draw from the same all the profit, utility, and advantages which it may produce, provided it be without altering the substance of the thing." *Le Blanc v. Commissioner*, 7 B.T.A. 256, 261 (1927)(applying the Louisiana Civil Code); see also *Bergman v. Commissioner*, 66 T.C. 887, 895 (1976) (comprehensive discussion of the term usufruct); Black's Law Dictionary, 1384 (5th ed. 1979).

We note that, if the property qualifies for QTIP treatment, the entire property is subject to tax in the surviving

spouse's estate. If it is transferred by the surviving spouse before his death (as was done in this case), the entire property is subject to gift tax. Secs. 2044, 2519.

Respondent contends that the subject bequest is not a qualifying income interest for life under section 2056(b)(7)(B)(ii), and therefore not QTIP property, because the condition subsequent language in decedent's will "infringes on the surviving spouse's entitlement to a usufruct interest for life in the property."

*Surviving Spouse Has A Qualifying Interest For Life*

Section 2056(b)(7)(B)(ii) requires us to examine the property interest that is passed to the surviving spouse. If we find that the surviving spouse either was entitled to all income from the property during the life of the surviving spouse, or was entitled to a usufruct interest in the property, the surviving spouse has a qualifying income interest for life. Accordingly, we must decide whether limits imposed by the will on the life estate bar eligibility for the QTIP rule.

*Evidentiary Objections: Relevance, Materiality, and Parol Evidence*

At trial, respondent made timely objection to the introduction of the note and deed of trust signed by Helen and Gustav Novotny and secured by the property as irrelevant, immaterial, and violative of the parol evidence rule. This objection was overruled. Respondent has properly renewed the objection on brief. We decline to change the ruling, however, as explained next.

The will contained several limits on Gustav Novotny's life estate. To decide the impact of these limits for purposes of the QTIP rule, we must examine limits imposed on Gustov as a life tenant under Maryland law, and under the note and deed of trust secured by the property, which he signed. The respondent's objection, if granted, would have the effect of depriving the Court of this information.

Rule 401, Federal Rules of Evidence, applicable here pursuant to Rule 143, and section 7453, defines relevant evidence as "evidence having any tendency to make the existence of any *fact* that is of consequence to the determi-

nation of the action more probable or less probable than it would be without the evidence." *Armco, Inc. v. Commissioner,* 87 T.C. 865, 867 (1986).

Here, the writing in the will is clear. However, the decedent's and her surviving spouse's interest in the property is relevant because it must be compared with the interest in the property passed to the surviving spouse. This issue is separate from the intent of the testatrix as stated in the will.

We next examine the application of the parol evidence rule here. We have relied upon Scott's definition of the parol evidence rule as it applies to trusts, stated as follows:

> Under the parol evidence rule, if the manifestation of intention of the settlor is integrated in a writing, that is, if a written instrument is adopted by him as the complete expression of his intention, extrinsic evidence, in the absence of fraud, duress, mistake or other ground for reformation or rescission, is not admissible to contradict or vary it. * * * [1 Scott, Trusts 301 (3d ed. 1967).]

*Estate of Craft v. Commissioner,* 68 T.C. 249, 259 (1977), affd. per curiam 608 F.2d 240 (5th Cir. 1979). Here, there is no attempt to vary or contradict the terms of the will. Instead, we seek to determine and compare the interests in the property before and after the will became effective. The parol evidence rule does not bar admission of evidence for this purpose. Accordingly, respondent's evidentiary objections are overruled.

## The Bequest

We find that the limits on the life estate, stated in the will, have no significance for purposes of the QTIP rule because the conditions existed independently from the will.

The will states conditions subsequent by providing that if Gustav does not pay certain amounts, including taxes, mortgage payments, maintenance expenses, and repairs, Gustav's life estate in the residence will terminate. All of these limits were independently applicable for Gustav Novotny because of the deed of trust and Maryland law. We find that the effect of the will is that Gustav is entitled to all income from the property during his life, or has a usufruct interest for life in the property. Accordingly, we

find that Gustav had a qualifying income interest for life in the property.

*The Deed of Trust*

The bequeathed property interest was subject to a deed of trust. Under the deed of trust, the borrowers, both decedent and Gustav, were jointly and severally liable, and both had several responsibilities including to—

1. Pay the principal and interest of the mortgage;
2. Pay taxes and insurance assessments and other charges;
3. Provide for hazard insurance for the property;
4. Preserve and maintain the property in good repair and not commit any waste; and to
5. Protect the security of the lender.

Accordingly, pursuant to the deed of trust, if the borrowers failed in any of these responsibilities, the property could be taken by the trustees.

Immediately prior to her death, decedent owned a conditional interest in the property. The property interest conveyed under the will was subject to the same conditions provided in the deed of trust.

Because Gustav signed the deed of trust, his obligations immediately prior to decedent's death were identical to those of the decedent and were also governed by the deed of trust. Thus, immediately before decedent's death, Gustav was obligated, under the deed of trust, to make the mortgage payments, pay real estate taxes, and maintain and repair the property. Respondent does not disagree that Gustav had the same obligations under the deed of trust as decedent at the decedent's death.

*Legal Obligations of a Life Tenant Under Maryland Law*

Maryland law imposes several obligations on the holder of a life interest. A life tenant's rights and responsibilities are identical to those of a trust income beneficiary under Maryland law. Sec. 14-211, Estates and Trusts Article, Annotated Code of Maryland (1974). Charges against income include regularly recurring taxes assessed against any portion of the principal, interest, ground rents, and ordinary

repairs. Sec. 14-210(a)(1), Estates and Trusts Article, Annotated Code of Maryland (1974). Charges against principal include the payments on principal of an indebtedness (including a mortgage amortized by periodic payments of principal and mortgage prepayment charges). Sec. 14-210(c)(2), Estates and Trusts, Annotated Code of Maryland. An action for waste may be brought by the remainder-person. Sec. 14-102, Real Property, Annotated Code of Maryland (1981). Thus, except for payment of deed of trust principal, a life tenant has substantially the same obligations under Maryland law as those set forth under the will.

The following chart summarizes limits imposed on Helen and Gustav Novotny before and after Helen's death.

*Summary of Interests and Obligations Before and After Decedent's Death*

*Termination of right to property if fail:*

|  | To pay mortgage | To pay real estate taxes | To pay for repairs to not waste |
|---|---|---|---|
| Helen before death | Yes | Yes | Yes |
| Gustav before decedent's death | Yes | Yes | Yes |
| Gustav under the will | Yes | Yes | Yes |
| Gustav after decedent's death, note paid off and will provisions | N/A | Yes | Yes |
| Gustav after decedent's death, note paid off and no will provisions | N/A | Yes | Yes |

We recognize that there is a very remote possibility that a situation may occur where the obligations under the will do not exactly coincide with those under the deed of trust or State law. For example, the mortgagee may decide not to foreclose upon failure to make mortgage payments. Similarly, the tax collector may decide not to take action to collect real estate taxes due. We believe that the situations in this case where the obligations would not exactly coincide under the will and under the deed of trust and State law are extremely remote.

### Purpose of the Terminable Interest Rule

This case requires construction of the QTIP rule first enacted in 1981. However, an analogy to pre-1981 rules is helpful in understanding the issue.

From 1948 to 1981, property left to a surviving spouse was not eligible for the marital deduction if it was a terminable interest. There is extensive case law interpreting the phrase "terminable interest." Many of the cases involved subtle, and not so subtle, attempts by the predeceasing spouse to materially limit the surviving spouse's rights to the property. We found no case finding a terminable interest where the limits on the surviving spouse were as narrow as here. If the duties imposed on Gustav Novotny by the will here would not be a pre-ERTA terminable interest, we do not believe it is a terminable interest after enactment of the QTIP rule in 1981.

*Decision will be entered for the petitioner.*