ESTATE OF LOREN DOHERTY, DECEASED, DAN A. DOHERTY, PERSONAL REPRESENTATIVE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5568-88.          Filed October 18, 1990.

*Paul A. Kastler,* for the petitioner.
*Robert A. Varra,* for the respondent.

OPINION

NIMS, *Chief Judge:* Respondent determined a deficiency of $205,884 in petitioner's Federal estate tax. After concessions, the issues for decision are: (1) Whether petitioner is

entitled to value real property at its special use value pursuant to section 2032A, even though petitioner did not attach a formal written appraisal to the filed estate tax return; and (2) for purposes of the marital deduction, whether the surviving spouse has a "qualifying income interest for life" within the meaning of section 2056(b)(7). (Unless otherwise indicated, section references are to the Internal Revenue Code as amended and in effect at the date of decedent's death. Rule references are to the Tax Court Rules of Practice and Procedure.)

The parties submitted this case fully stipulated. The stipulation of facts and accompanying exhibits are incorporated herein by this reference.

## Background

Loren Doherty (decedent), a lifelong resident and domiciliary of New Mexico, died testate on April 17, 1984. In accordance with her will, decedent's surviving spouse, Dan A. Doherty (sometimes referred to herein as Mr. Doherty), was appointed personal representative of the estate. Mr. Doherty resided in New Mexico when the petition was filed in this case.

Petitioner timely filed a Federal estate tax return, Form 706, in January of 1985 with the Internal Revenue Service (IRS) Center at Austin, Texas. On page 2 of Form 706, petitioner checked the "yes" box in answer to the question, "Do you elect the special use valuation?" Petitioner also checked the "yes" box in answer to the question, "Do you elect to claim a marital deduction for an otherwise nondeductible interest under section 2056(b)(7)?"

### Special Use Valuation

At the time of decedent's death, decedent and Mr. Doherty (the Dohertys) owned as community property 16,601 shares of Ganado, Inc. (Ganado), a New Mexico corporation. Ganado had been incorporated by the Dohertys in 1976 and had a total of 24,000 shares outstanding. Prior to decedent's death, the Dohertys had made gifts of 7,399 shares of Ganado stock to their three children, including 1,333 shares to each child in 1980.

Ganado owned a 50-percent interest in a partnership called Doherty Investment Co. The partnership assets included cash, investments, cattle inventory, State land leases, and ranchland in Las Animas County, Colorado, and Union County, New Mexico. At decedent's death, the fair market value of the partnership's assets (less liabilities) was $5,200,539.

On the estate tax return, petitioner calculated the section 2032A special use value of the Dohertys' indirect interest in the partnership. The parties have stipulated that petitioner's calculated result, $49.63 per Ganado share, is computationally correct if petitioner is entitled to special use valuation. (The parties agree that the indirect nature of the Dohertys' interest in the real property does not disqualify petitioner from special use valuation. See generally *Estate of Maddox v. Commissioner,* 93 T.C. 228 (1989).) Because decedent had a one-half community property interest in 16,601 Ganado shares, the special use value of decedent's interest in the shares is $411,954 (or $49.63 times 16,601 times 1/2).

Petitioner included a Schedule B-2 as a supplement to the estate tax return. Schedule B-2, roughly in the form of a balance sheet, depicts the partnership's assets and liabilities as of decedent's death at both a "market value" and a "special use value." Petitioner treated four of the partnership assets as eligible for special use valuation and presented their market values as follows: (1) 8,157.87 acres of "New Mexico State Leases," with a listed market value of $26.25 per acre, totaling $214,144; (2) 1,120 acres of "Colorado State Leases," with a listed market value of $21.25 per acre, totaling $23,800; (3) 18,045 acres of Colorado "Real Estate" (the Colorado ranchland), with a listed market value of $85 per acre, totaling $1,533,825; and (4) 25,400 acres of New Mexico "Real Estate" (the New Mexico ranchland), with a listed market value of $105 per acre, totaling $2,667,000. The labeling on Schedule B-2 indicates that the per-acre market values for the leases were computed as one-fourth of the per-acre market value for the corresponding ranchland. Neither Schedule B-2 nor any other part of the filed return reveals the derivation of the ranchland per-acre market values.

Petitioner attached to its return a notice of election and an agreement to special valuation (recapture agreement), as described in section 20.2032A-8(a)(3) and (c), Estate Tax Regs. Item VIII in the notice of election, with a heading of "Copies of written appraisals of F.M.V.," reads in its entirety: "There are none. Value determined by Personal Representative. See attached for comparable rental value." The only other reference to "comparable rental value" on the return appears earlier in the notice of election, where petitioner set forth its computations of the special use values for the two ranchland properties. Petitioner there used a $3-per-acre comparable rental value for the Colorado ranchland and a $3.50-per-acre comparable rental value for the New Mexico ranchland. As already noted, respondent does not dispute petitioner's calculation of the applicable special use values. The notice of election also shows the fair market value computations for the Colorado ranchland and the New Mexico ranchland, using the same per-acre multipliers, again without further explanation, that appear in Schedule B-2.

By letter dated February 20, 1987, IRS attorney Pamelya Herndon informed Mr. Doherty that the estate tax return had been assigned to her for audit. The letter made no reference to section 2032A or to the special use valuation election.

Ms. Herndon later sent a letter to petitioner's attorney (the preparer of the return and counsel of record in this case), dated March 6, 1987, devoted primarily to the IRS position on section 2032A. In concluding that special use valuation was not available to petitioner, the letter summarizes:

It is the Government's position that since the estate did not provide a copy of a written appraisal of the decedent's farm property at the time the estate tax return was initially filed, and since there was no written appraisal obtained prior to the time that the return was filed, the estate's special use valuation election is defective. * * *

Sometime after this, petitioner hired David Floyd to appraise the two ranchland properties that were subjects of the attempted section 2032A election, as of the date of decedent's death. Mr. Floyd had trouble completing the appraisals because of his very poor health, of which the IRS

was informed at the time. Nonetheless, he submitted completed market-value appraisals dated July 15, 1987, to petitioner's attorney. He valued the New Mexico ranchland at $2,946,000 or $116 per acre ($2,991,000 or $118 per acre including improvements). He valued the Colorado ranchland at $1,227,000 or $68 per acre ($1,232,000 or $68 per acre including improvements). In accordance with the instructions of petitioner's attorney, Mr. Floyd did not appraise the State lease lands or the improvements thereon. By transmittal letter dated July 24, 1987, the appraisals were submitted to the IRS.

IRS attorney Thomas Eagan, to whom examination of the estate tax return had been reassigned, wrote to petitioner's attorney on July 28, 1987. This letter requested, among several other things, "A copy of the appraisal which is being made of the ranchland held by Doherty Investment Company partnership." Mr. Eagan essentially repeated the section 2032A analysis appearing in the March 6, 1987, correspondence, but added:

Even if the lack of a written appraisal of fair market value could be perfected, both section 2032A(d)(3) and section 1421(b) of the Tax Reform Act of 1986 require that the defect be perfected within 90 days from the date of receipt of notice from the [Internal Revenue] Service. It has now been more than 90 days since your letter of March 25, 1987 responding to the letter of March 6, 1987 from * * * [Ms. Herndon] concerning the necessity of a written appraisal.

The referenced letter of March 25, 1987, from petitioner's attorney to the IRS is not part of the record.

The notice of deficiency states that petitioner failed to qualify for special use valuation under section 2032A(d)(1) and failed to perfect the election under section 2032A(d)(3).

*Marital Deduction*

Decedent's will, dated June 4, 1981, provides for the distribution of certain tangible personal property and then establishes a testamentary trust:

5. I give and devise all of the rest and residue of my property unto my Trustee hereinafter named, to have and to hold, in Trust nevertheless, for the uses and purposes and with the powers hereinafter declared, to-wit:

(a) *Designation of Trust and Trustee:* * * * The Trustee shall be DAN A. DOHERTY and the successor Trustee will be MICHAEL ANTHONY DOHERTY [the Dohertys' son].

(b) *Disposition of Income:* The Trustee shall in the Trustee's complete discretion retain and accumulate the net income, or in his complete discretion may pay any part or all of said income to DAN A. DOHERTY, during his life.

\* \* \* \* \* \* \*

(d) *Disposition of Corpus and Termination of Trust:* This Trust shall terminate upon the death of DAN A. DOHERTY (provided, however that nothing in this paragraph shall be construed to prohibit or prevent the Trustee from distributing all the principal and income of the Trust to or for the benefit of the said beneficiary) [sic] prior to the death of the said beneficiary. Upon termination of the Trust occasioned by the death of the said beneficiary, my successor Trustee shall terminate the Trust and distribute the remaining principal, together with any accumulated or accrued income, to my children * * * or their children by right of representation, per stirpes. In the event any of such beneficiaries are under twenty-one (21) at the time of such distribution, then I direct that there shall be held in Trust, by the successor Trustee under the terms and provisions of this Trust until such time as they reach their twenty-first (21st) birthday, at which time distribution of their portion of the Trust shall be made to them.

(e) *Invasion of Corpus for Emergency Purposes:* I authorize and empower the Trustee to invade the corpus of the Trust, and to take such action as is necessary to liquidate such part of the corpus of the Trust as is necessary, in cases of emergency needs of the beneficiary or beneficiaries, including, but not limited to support, care, health, or maintenance, provided that the share so to be distributed shall not exceed five percent (5%) of the value of the corpus in any one year.

\* \* \* \* \* \* \*

(h) *Additional Powers of Trustee:* The Trustee is hereby expressly authorized and empowered to exercise the following powers in addition to those heretofore enumerated, to-wit:

1. Determine how all receipts and disbursements shall be credited, charged or apportioned as between income and principal, provided, however, that (a) upon the death of any beneficiary entitled to receive income hereunder, all undistributed income to which such beneficiary would have been entitled had such beneficiary lived until the next distribution date shall be treated as if it had accrued immediately following the death of such beneficiary * * * .

\* \* \* \* \* \* \*

(j) *Succession* * * * of Trustees: In the case of the death, resignation, or any other act or event which creates a vacancy in the Trust, the title of the outgoing Trustee shall vest in MICHAEL ANTHONY

DOHERTY, or if he be not then alive, to my remaining children then alive, jointly. * * *

In a Disclaimer and Renunciation dated January 7, 1985, and filed with the Union County (New Mexico) District Court, Mr. Doherty, in his capacities as personal representative and trustee, disclaimed the following "property" described in paragraph 5(d) of the will:

...(provided, however that nothing in this paragraph shall be construed to prohibit or prevent the Trustee from distributing all the principal and income of the Trust to or for the benefit of the said beneficiary prior to the death of the said beneficiary.)

In his notice of deficiency, respondent determined that petitioner did not qualify for a section 2056(b)(7) marital deduction, which petitioner had claimed on Schedule M of the estate tax return.

## Discussion

Section 2001 imposes a tax on the transfer of the taxable estate of a decedent who is a citizen or resident of the United States. The amount of the tax depends on the amount of the taxable estate, sec. 2001(b), which is equal to the value of the gross estate less deductions. Sec. 2051. Special use valuation of real property relates to the value of the gross estate. Secs. 2031 and 2032A. The marital deduction is a deduction from the value of the gross estate. Secs. 2051 and 2056(a).

### Special Use Valuation

The value of property included in the gross estate of a decedent is generally the fair market value of the property interest at the time of death. Sec. 2031(a). The Tax Reform Act of 1976, in adding section 2032A to the Internal Revenue Code, adopted an alternative means for valuing real property used in family farming operations or other closely held businesses. Pub. L. 94-455, sec. 2003(a), 90 Stat. 1856. Section 2032A permits special valuation of property based on its actual use, as opposed to fair market value based on its highest and best use, for estate tax purposes. Sec. 20.2032A-3(a), Estate Tax Regs.; *Estate of Strickland*

*v. Commissioner,* 92 T.C. 16, 21 (1989); *Estate of Gunland v. Commissioner,* 88 T.C. 1453, 1454 (1987).

An estate must meet several conditions to be eligible for special use valuation, and strict compliance with section 2032A is generally required. See *Estate of Cowser v. Commissioner,* 736 F.2d 1168 (7th Cir. 1984), affg. 80 T.C. 783 (1983); *Estate of Abell v. Commissioner,* 83 T.C. 696 (1984). Among the conditions is that the estate must make an election on the Federal estate tax return. Sec. 2032A(a)(1)(B) and (d)(1). The manner of the election is prescribed by section 20.2032A-8(a)(3), Estate Tax Regs., which regulation is expressly authorized by the statute and valid. *Estate of Gunland v. Commissioner, supra* at 1456-1458; see *Prussner v. United States,* 896 F.2d 218, 222 (7th Cir. 1990).

Section 20.2032A-8(a)(3), Estate Tax Regs., requires as an attachment to the estate tax return a notice of election containing 14 items of information. One such item is described as follows: "Copies of written appraisals of the fair market value of the real property." Sec. 20.2032A-8(a)(3)(ix), Estate Tax Regs. Respondent contends that petitioner did not comply with this item on the filed return, was not eligible to correct the alleged omission, and even if eligible did not timely correct it. Respondent disputes nothing else about petitioner's attempted election or its eligibility for special use valuation.

We first consider whether petitioner complied with the appraisal requirement at the time the estate tax return was filed. Petitioner argues that the regulation is worded not to require the obtaining of appraisals, but instead to require the submission of those appraisals already in existence. It follows, according to petitioner, that if the estate has no appraisals, then the regulation requirement does not apply.

Petitioner's reading would presumably be correct if section 20.2032A-8(a)(3)(ix), Estate Tax Regs., used the words "if any" following "appraisals." In the absence of these or similar words, however, we believe that the provision is reasonably read to require that an appraisal be obtained and that a copy thereof be submitted as part of the notice of election.

Even assuming that the regulations require the obtaining of an appraisal, petitioner alternatively maintains that Mr. Doherty, as personal representative, appraised the subject property himself and so stated in writing on the filed return. Specifically, the notice of election states with regard to written appraisals, "Value determined by Personal Representative. See attached for comparable rental value." Schedule B-2 of the return specifies per-acre market values for all the specially valued property, both the ranchland and the State land leases, and the notice of election repeats those values for the ranchland.

We need not determine precisely what constitutes a written appraisal within the meaning of section 20.2032A-8(a)(3)(ix), Estate Tax Regs. It is enough in this case to decide that the filed return falls short, however the written appraisal standard may be reasonably defined. Significantly, the return provides no information whatsoever regarding the derivation of Mr. Doherty's market value estimates for the ranchland. Further, the notice of election reference to "comparable rental value" as support for Mr. Doherty's determination is itself unsupported. The only mention of comparable rental value on the return is in the context of special use values, not fair market values. Finally, the notice of election contains something of a concession on this matter. Under the heading, "Copies of written appraisals of F.M.V.," the first sentence reads, "There are none."

Accordingly, we find that petitioner's attempted election of special use valuation did not comply with the time and manner requirements of section 20.2032A-8(a)(3), Estate Tax Regs.

Section 2032A(d)(3), however, permits something less than strict compliance with the election requirements:

(3) MODIFICATION OF ELECTION AND AGREEMENT TO BE PERMITTED.—The Secretary shall prescribe procedures which provide that in any case in which—

    (A) the executor makes an election under paragraph (1) within the time prescribed for filing such election, and

    (B) substantially complies with the regulations prescribed by the Secretary with respect to such election, but—

        (i) the notice of election, as filed, does not contain all required information, or

        (ii) * * *

the executor will have a reasonable period of time (not exceeding 90 days) after notification of such failures to provide such information or agreements.

Section 2032A(d)(3), as added by the Deficit Reduction Act of 1984, applies retroactively to decedents dying after December 31, 1976. Pub. L. 98-369, sec. 1025(a) and (b)(1), 98 Stat. 1030.

Under section 2032A(d)(3), an estate will have an opportunity to correct informational omissions in its notice of election if the estate "substantially complies" with the regulations. Because respondent has questioned only the written appraisal requirement of section 20.2032A-8(a)(3)(ix), Estate Tax Regs., the issue is whether that one omission precludes substantial compliance within the meaning of section 2032A(d)(3). We hold that it does.

This Court has recently stated that, of the 14 items to be included in a notice of election under the regulations, "there are certain informational items that do not relate to the substance or essence of the statute." *Estate of Strickland v. Commissioner*, 92 T.C. 16, 29 (1989). Petitioner maintains that the requirement of a written appraisal is one such item and that, accordingly, petitioner substantially complied with the regulations even without submitting a written appraisal.

Petitioner devotes a good part of its argument in this case to the purported "procedural," "directory," and "informational" nature of the appraisal requirement. Although the fair market values themselves may go to the essence of the statute, admits petitioner, fair market values do appear on the return, and only the detailed support for those values is missing. In addition, petitioner's argument continues, written appraisals are not automatically required for an estate not availing itself of special use valuation. From a case law standpoint, petitioner cites *Taylor v. Commissioner*, 67 T.C. 1071 (1977), which lists factors that support the rejection of an untimely tax election. Petitioner asserts that those factors are lacking here. Petitioner also cites, and generally distinguishes as factually more egregious, several cases that have rejected an attempted section 2032A election.

Petitioner relies heavily on Technical Advice Memorandum (TAM) 8725002, dated March 18, 1987, in support of its

position that the written appraisal requirement in the regulations is not substantive or of the essence, and thus is unnecessary for substantial compliance. According to petitioner, TAM 8725002 supports a "procedural" characterization of the appraisal requirement because the IRS: (1) Permitted written appraisal information to be submitted after the filing of the return, and (2) accepted the appraisal of the attorney (not a professional appraiser) who prepared the return.

The most fundamental problem with petitioner's reliance on TAM 8725002 is that a technical advice memorandum, like the private letter rulings petitioner also cites, may not be used or cited as precedent. Sec. 6110(b)(1) and (j)(3). Moreover, the facts in the TAM differ meaningfully from those before us. The TAM states that its conclusions are in accordance with the legislative history of section 2032A(d)(3), which we discuss below, in that "the appraisals were obtained before the estate tax return was filed."

The meaning of "substantially complies" is not clear from the face of section 2032A(d)(3). *Prussner v. United States,* 896 F.2d 218, 222-225 (7th Cir. 1990). Consequently, we are justified in looking to the legislative history for guidance. *McDonald v. Commissioner,* 853 F.2d 1494, 1498 (8th Cir. 1988), affg. in part and revg. in part 89 T.C. 293 (1987). As stated in that legislative history:

Both a notice of election and an agreement that themselves evidence substantial compliance with the requirements of the regulations must be included with the estate tax return, as filed, if the estate is to be permitted to perfect its election.

Illustrations of the type of information that may be supplied after the initial filing of a notice of election are omitted social security numbers and addresses of qualified heirs and copies of written appraisals of the property to be specially valued. *This provision does not, however, permit such appraisals to be obtained only after the estate tax return is made. Rather, the provision simply permits the submission of previously obtained appraisals.* \* \* \* [Emphasis added.]

[H. Rept. 98-861 (Conf.) (1984), 1984-3 C.B. (Vol. 2) 495.]

Although this Court has not previously considered the appraisal issue specifically, we have cited the section 2032A(d)(3) legislative history with approval several times. E.g., *Estate of Strickland v. Commissioner, supra* at 29; *McDonald v. Commissioner,* 89 T.C. 293, 306-307 (1987),

affd. on this issue 853 F.2d 1494 (8th Cir. 1988); *Estate of Johnson v. Commissioner*, 89 T.C. 127, 132-133 (1987); *Estate of Grimes v. Commissioner*, T.C. Memo. 1988-576; *Estate of Nesselrodt v. Commissioner*, T.C. Memo. 1988-489; *Estate of Killion v. Commissioner*, T.C. Memo. 1988-244.

Other than Mr. Doherty's market value estimates appearing on the face of the return, which we have already decided are not proper written appraisals, petitioner does not contend that it possesses a written appraisal obtained before the filing of the return. Because petitioner fits squarely within the discussion in the legislative history, there has not been substantial compliance with the regulations, and the relief provisions of section 2032A(d)(3) do not apply in this case. In *Estate of Strickland v. Commissioner*, *supra*, we similarly determined section 2032A(d)(3) relief to be unavailable, with reference to the legislative history, although the estate omitted only one item from the notice of election.

Petitioner characterizes the illustration in the legislative history as without "logic, sense or purpose," and urges us to disregard it. Admittedly, we sometimes look behind apparently clear statutory language to the legislative history in order to ensure that the statute is interpreted in a practical way. *Fehlhaber v. Commissioner*, 94 T.C. 863, 865-866 (1990). Petitioner, however, seeks to extend this principle to override the plain words of the legislative history. We decline to do so.

The parties disagree about whether petitioner perfected its deficient election within the 90-day period provided by section 2032A(d)(3). Petitioner makes several arguments in this regard, including that respondent never took the action necessary to start the clock running and that Mr. Floyd's poor health was reasonable cause for any missed deadlines. Petitioner's failure to establish substantial compliance with the regulations, however, forecloses any relief under the 90-day provision. H. Rept. 98-861 (Conf.) (1984), 1984-3 C.B. (Vol. 2) 495.

Petitioner next contends that a 1986 amendment to section 2032A forgives petitioner's failure to comply fully with the regulations. Section 1421 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2716 (hereinafter referred to

as section 1421), as amended and pertinent here, provides as follows:

(a) IN GENERAL.—In the case of any decedent dying before January 1, 1986, if the executor—

   (1) made an election under section 2032A of the Internal Revenue Code of 1954 on the return of tax imposed by section 2001 of such Code, and

   (2) provided substantially all the information with respect to such election required on such return of tax,

such election shall be a valid election for purposes of section 2032A of such Code.

(b) EXECUTOR MUST PROVIDE INFORMATION.—An election described in subsection (a) shall not be valid if the Secretary of the Treasury or his delegate after the date of enactment of this Act requests information from the executor with respect to such election and the executor does not provide such information within 90 days of receipt of such request.

Petitioner maintains that it provided substantially all the information required on the estate tax return, within the meaning of section 1421(a)(2), even without providing a written appraisal.

This Court recently considered section 1421 in *Estate of Merwin v. Commissioner,* 95 T.C. 168 (1990). We there stated that the exclusive congressional concern in enacting section 1421 was providing relief to those taxpayers misled by the face of Form 706 as to the filing requirements for a special use valuation election. 95 T.C. at 180. We found that the failure of the taxpayer in *Estate of Merwin* to include a recapture agreement with its filed return was not attributable to a misleading Form 706. 95 T.C. at 183.

Petitioner, similarly, was not misled by Form 706 into omitting a written appraisal. Petitioner demonstrated this by attaching a notice of election to the return that closely tracked the applicable regulations and included as a heading, "Copies of written appraisals of F.M.V." Petitioner's failure to submit an appraisal with its filed return, or to obtain one prior to such filing, was apparently attributable not to ignorance of the existence of the appraisal requirement, but to a mistaken impression concerning the nature of the requirement or its importance. Such a misunderstanding is not the primary focus of section 1421.

In our view, petitioner has not provided "substantially all the information" within the meaning of section 1421(a)(2) because both of the following apply: (1) The cause of the deficient election was not a misleading Form 706; and (2) petitioner has failed to meet the substantial compliance standard of section 2032A(d)(3). These two elements were also present in *Estate of Merwin v. Commissioner, supra,* in which we found that the estate, because of an omitted recapture agreement, did not satisfy section 1421(a)(2).

Finally, petitioner argues that respondent, under waiver and estoppel principles, may not now contest petitioner's compliance with the written appraisal requirement. We see nothing in this record, however, that lends support to either theory.

We hold that petitioner is not entitled under section 2032A to specially value its indirect interest in real property.

*Marital Deduction*

Section 2056(a) allows a marital deduction from the gross estate for the value of property interests passing from a decedent to a surviving spouse. A marital deduction is generally not allowable, however, for a "terminable interest," which is a property interest that will terminate or fail "on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur." Sec. 2056(b)(1). Thus, an interest in the nature of a life estate is ordinarily not eligible for the marital deduction. *Estate of Kyle v. Commissioner,* 94 T.C. 829, 838 (1990); *Estate of Nicholson v. Commissioner,* 94 T.C. 666, 671 (1990).

Effective for estates of decedents dying after 1981, section 2056(b)(7), as added by the Economic Recovery Tax Act of 1981, permits a marital deduction for "qualified terminable interest property," or QTIP property. Pub. L. 97-34, sec. 403(d)(1) and (e)(1), 95 Stat. 302, 305.

The parties agree that the property in question here meets two of the three general requirements for QTIP property in section 2056(b)(7)(B)(i). That is, the property passes from the decedent and a proper election has been made on the return. The parties disagree, however, about

whether Mr. Doherty, the surviving spouse, has the necessary "qualifying income interest for life" in the property, as defined in section 2056(b)(7)(B)(ii):

(ii) QUALIFYING INCOME INTEREST FOR LIFE.—The surviving spouse has a qualifying income interest for life if—

(I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, or has a usufruct interest for life in the property, and

(II) no person has a power to appoint any part of the property to any person other than the surviving spouse.

Respondent contends that petitioner does not satisfy either subclause (I) or (II).

A determination of the nature of the interest that passes to a surviving spouse is made under the law of the jurisdiction under which the interest passes. *Estate of Nicholson v. Commissioner, supra* at 672-673; *Estate of Bowling v. Commissioner,* 93 T.C. 286, 293 (1989). Under New Mexico law, the intent of a testator as expressed in her will controls the legal effect of her dispositions. N.M. Stat. Ann. sec. 45-2-603 (1978). In determining a testator's intent, the will is considered as a whole. *New Mexico Boys Ranch, Inc. v. Hanvey,* 97 N.M. 771, 643 P.2d 857, 859 (1982); *In re Will of McDowell,* 81 N.M. 562, 469 P.2d 711, 712 (1970).

Regarding section 2056(b)(7)(B)(ii)(I), respondent argues that the surviving spouse, Mr. Doherty, is not entitled to all the income from the property, payable annually or at more frequent intervals, primarily on the ground that paragraph 5(b) of decedent's will grants the trustee complete discretion to retain and accumulate net income. This accumulated amount, under paragraph 5(d) of the will, is to be distributed to the Dohertys' children following Mr. Doherty's death.

Petitioner appears to challenge the effect of the accumulation provisions of decedent's will, asserting that any accumulated income will be distributed to Mr. Doherty's estate upon his death, rather than to the children. Petitioner cites as authority 1 Restatement, Trusts 2d, sec. 235A (1959), which provides:

Where property is given in trust to pay the income to a beneficiary for life and on his death to pay the principal to others, such income as has

been received by the trustee or has accrued prior to the death of the life beneficiary and has not been paid to him is payable to his personal representatives, unless it is otherwise provided by the terms of the trust.

However, regardless of whether this provision covers the facts before us, the "otherwise provided" language makes the general rule of section 235A expressly subordinate to the terms of the trust. See 1 Restatement, Trusts 2d, sec. 128, comment d (1959); cf. *Lemon v. Hall*, 97 N.M. 429, 640 P.2d 929 (1982) (income was not distributable to estate of deceased income beneficiary, even though trust would not terminate until death of another). The trust in this case by its terms provides for distribution to the Dohertys' children.

Petitioner has directed us to no authority under applicable State law that would prevent the discretionary accumulation of income, and subsequent distribution to the children, called for by the face of decedent's will. Indeed, under New Mexico's Revised Uniform Principal and Income Act, a "remainderman" is defined as a person entitled to principal, including income that has been "accumulated and added to principal." N.M. Stat. Ann. sec. 46-3-1 (1978). We recognize that the "complete discretion" granted to the trustee under decedent's will may not truly be absolute. See G. Bogert, The Law of Trusts and Trustees, sec. 560, p. 181 (rev. 2d ed. 1980); 3 A. Scott, Trusts, sec. 187, p. 1501 (3d ed. 1967); 1 Restatement, Trusts 2d, sec. 187, comment j (1959). It is, however, sufficient discretion for our purposes to prevent Mr. Doherty from being considered entitled to all the income.

Petitioner attempts to rebut this conclusion by referring to the Disclaimer and Renunciation dated January 7, 1985. According to petitioner, "The disclaimer renounced the trust's and remaindermen's interest in accumulated income from the life estate," and "petitioner has timely disclaimed all right to accumulate and pass on the income interest to the remaindermen."

We need not here address the many issues this position raises, including the general effect of a disclaimer on eligibility for the marital deduction and conformance of the Disclaimer and Renunciation with State law. See *Cleaveland v. United States*, 62 AFTR 2d 88-5992, 88-1 USTC par. 13,766 (C.D. Ill. 1988); N.M. Stat. Ann. sec. 45-2-801 (1978). It is enough for us to decide that petitioner's proffered

interpretation of the Disclaimer and Renunciation is not a reasonable one.

By the terms of that document, Mr. Doherty, as personal representative and trustee, disclaimed only a portion of paragraph 5(d) of decedent's will, which follows "This Trust shall terminate upon the death of DAN A DOHERTY":

...(provided, however that nothing in this paragraph shall be construed to prohibit or prevent the Trustee from distributing all the principal and income of the Trust to or for the benefit of the said beneficiary prior to the death of the said beneficiary.)

This parenthetical appears to say that the trust may in effect terminate prior to the death of Mr. Doherty. A disclaimer or renunciation of the parenthetical would seem to have no effect on the trustee's discretion to accumulate income. Still intact are paragraph 5(b) of the will, which provides in part that the "Trustee shall in the Trustee's complete discretion retain and accumulate the net income," and the portion of paragraph 5(d) that refers to the distribution of accumulated income to the children upon Mr. Doherty's death.

Petitioner next asserts that, regardless of the theoretical discretion of the trustee, Mr. Doherty is decedent's designated trustee and thus has an unrestricted power to pay all of the net income to himself, under the express terms of paragraph 5(b) of the will.

Decedent's will plainly designates Mr. Doherty as trustee, and the record indicates that he has accepted and not relinquished the associated responsibilities. Nonetheless, the will also provides for a successor trustee, the Dohertys' son, in the event of "the death, resignation, or any other act or event which creates a vacancy in the Trust." Therefore, it is possible under the terms of the will that someone other than Mr. Doherty will have discretion to accumulate the net income, for the children's benefit, prior to Mr. Doherty's death.

This possibility prevents satisfaction of the requirement that the surviving spouse be "entitled to all the income from the property," sec. 2056(b)(7)(B)(ii)(I), regardless of the probability that Mr. Doherty will be replaced as trustee. As this Court has stated in a related context, "it is the possibility, not the probability, that an interest will termi-

nate or fail that will determine whether the surviving spouse's interest is a 'qualifying income interest for life.' " *Estate of Kyle v. Commissioner,* 94 T.C. 829, 845 (1990); see *Estate of Weisberger v. Commissioner,* 29 T.C. 217, 220-223 (1957).

In addition, this Court has noted that section 20.2056(b)-5(f), Estate Tax Regs., relating to power-of-appointment trusts under section 2056(b)(5), may apply to a QTIP property determination under section 2056(b)(7). *Estate of Nicholson v. Commissioner,* 94 T.C. 666, 672 (1990). Section 20.2056(b)-5(f)(7), Estate Tax Regs., provides that—

> An interest passing in trust fails to satisfy the condition * * * that the spouse be entitled to all the income, to the extent that the income * * * may be accumulated in the discretion of any person other than the surviving spouse. * * *

Compare sec. 20.2056(b)-7(c), Proposed Estate Tax Regs., 49 Fed. Reg. 21,357 (May 21, 1984) (principles of section 20.2056(b)-5(f), Estate Tax Regs., apply to QTIP property determination, whether or not property is in trust), with *Estate of Howard v. Commissioner,* 901 F.2d 633, 637 (9th Cir. 1990), revg. 91 T.C. 329 (1988) (suggesting that section 20.2056(b)-5(f), Estate Tax Regs., does not apply to QTIP property determination if property is in trust).

A recent case considered a situation similar to that before us, in that the surviving spouse was both the designated trustee and the primary income beneficiary. In *Wells v. United States,* 90-1 USTC par. 60,019 (D. Hawaii 1990), the will directed the surviving husband as trustee to pay income and principal to himself as he deemed "necessary or advisable to provide generously for his care, comfort, maintenance and travel," with any surplus income to be discretionarily paid to the decedent's children. The trust was to terminate upon the death of the surviving husband. The court found that there was no "qualifying income interest for life" within the meaning of section 2056(b)(7)(B):

> Although the will's residuary trust clause provides generously for Col. Wells and rests great power and discretion with him as Trustee, he is not entitled to all the income from the property. If he serves as trustee he may pay to himself all of the income from the trust corpus and may even deplete the corpus of the trust for his benefit. The residuary trust clause, however, indicates that Col. Wells need not necessarily serve as trustee.

If he declines or "cease[s] to serve as Trustee for any reason," First Hawaiian Bank shall serve as Trustee. Again, First Hawaiian Bank may pay all of the trust income to Col. Wells and may even pay him from the trust corpus. Because the Trustee has the discretion to pay part of the income from the trust to the decedent's children, however, Col. Wells is not *entitled* to *all income* from the property. If some of that income were paid to the children after the Trustee had provided generously for him, Col. Wells could not sue to recover that income or to claim it for himself. The decision fully rests within the trustee's discretion. [Emphasis in original.]

We do not find it a meaningful distinction that the trust in *Wells* permits current income distributions to the children while the trust here provides for accumulated income and subsequent distribution to the children. In both situations, the key is that the surviving spouse might not receive distributions of all of the trust income accruing before death.

Petitioner's principal argument that Mr. Doherty has a "qualifying income interest for life" is grounded in a 1984 addition to section 2056(b)(7)(B)(ii)(I). Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 1027, 98 Stat. 1031. As an alternative to the requirement that "the surviving spouse is entitled to all the income from the property," the surviving spouse may have "a usufruct interest for life in the property."

The legislative history clarifies that this provision was derived from a concept in the Louisiana Civil Code. H. Rept. 98-861 (Conf.) (1984), 1984-3 C.B. (Vol. 2) 493; S. Prt. 98-169 (1984), at 721. Under Lousiana law, a usufruct in favor of a surviving spouse is somewhat comparable to a common law life estate. *Estate of Novotny v. Commissioner,* 93 T.C. 12, 17 (1989); see *Bergman v. Commissioner,* 66 T.C. 887, 895-896 (1976). The concept is very involved, however, with significantly different consequences flowing from the differences between, for example, consumable and nonconsumable property, community and separate property, and legal and testamentary usufructs. See generally Yiannopoulos, "Of Legal Usufruct, the Surviving Spouse, and Article 890 of the Louisiana Civil Code: Heyday for Estate Planning," 49 La. L. Rev. 803 (1989).

Petitioner argues, on two grounds, that New Mexico also recognizes the usufruct concept. Petitioner first cites three

New Mexico cases that refer to a usufruct: *State ex rel. Bliss v. Dority,* 55 N.M. 12, 225 P.2d 1007, 1013 (1950); *State Game Commission v. Red River Valley Co.,* 51 N.M. 207, 182 P.2d 421, 460 (1945); and *Laughlin v. Laughlin,* 49 N.M. 20, 155 P.2d 1010, 1018 (1944). Petitioner then asserts that because New Mexico acquired its marital property laws from the civil law, and no State statute abrogates the usufruct concept, the usufruct remains as part of New Mexico law.

We do not here decide that the usufruct interest described in section 2056(b)(7)(B)(ii)(I) necessarily extends beyond that arising under Louisiana law. We merely conclude that, however broadly the concept is reasonably defined for purposes of section 2056(b)(7), it does not reach the New Mexico interest in issue here.

Louisiana modeled its Civil Code predominantly on the French civil law. See Hood, "The History and Development of the Louisiana Civil Code," 33 Tul. L. Rev. 7 (1958). The applicable civil law foundation for New Mexico was that of Spain and Mexico. *Field v. Otero,* 35 N.M. 68, 290 P. 1015, 1016-1017 (1930). Further, the French development of the surviving spouse's usufruct actually occurred later than that in Louisiana. *Succession of Waldron,* 323 So. 2d 434, 440 (La. 1975) (Dixon, J., dissenting); see Oppenheim, "The Usufruct of the Surviving Spouse," 18 Tul. L. Rev. 181, 184 (1943). Concerning present New Mexico law, since 1876 New Mexico has been a common law State. N.M. Stat. Ann. sec. 38-1-3 (1978); *Beals v. Ares,* 25 N.M. 459, 185 P. 780, 788 (1919). The adoption of the common law supplanted the civil law, except as the civil law was incorporated in the statutes. *Field v. Otero,* 290 P. at 1017. The New Mexico statutes do not incorporate a usufruct interest.

The three New Mexico cases cited by petitioner as referring to usufructs are not on point. None of the three uses the term in a way comparable to its established Louisiana meaning. Both *State ex rel. Bliss v. Dority,* 225 P.2d at 1013, and *State Game Commission v. Red River Valley Co.,* 182 P.2d at 460, are especially wide of the mark, invoking the common law of riparian rights to contrast titled ownership of a flowing stream with a "simple usufruct" as it passes along.

Petitioner has demonstrated neither that a usufruct concept comparable to that recognized in Louisiana is a part of New Mexico law, nor, a fortiori, that Mr. Doherty's beneficial interest in the trust comports with a New Mexico "usufruct."

Petitioner's reliance on *Estate of Novotny v. Commissioner*, 93 T.C. 12 (1989), for a broad construction of usufruct is also misplaced. In that case, decided under Maryland law, we found that "the effect of the will is that * * * [the surviving spouse] is entitled to all income from the property during his life, or has a usufruct interest for life in the property." 93 T.C. at 19. This statement merely paraphrases the requirement in section 2056(b)(7)(B)(ii)(I). It is not an acknowledgment that the usufruct concept in subclause (I) necessarily extends to Maryland property interests.

Petitioner argues at length, and in several contexts, that the key here is whether Mr. Doherty had a right to the trust income for his life and beneficial enjoyment of the property. Petitioner arrives at this notion by asserting that a usufruct is analogous to a common law life estate, which should be evaluated under right-to-income and beneficial-enjoyment principles. Similarly, petitioner contends that Congress did not limit the usufruct concept to Louisiana, and therefore we must look to the definition of "income interest for life" (from the introductory language of section 2056(b)(7)(B)(ii)), which should be determined by the benefit and enjoyment of the surviving spouse.

In effect, petitioner seeks to gain a statutory foothold based on a vague usufruct theory and then to spring back into select standards that underlie section 2056(b)(5), conveniently ignoring the trustee's discretion to accumulate income. As discussed above, however, petitioner has failed to meet the requirements of section 2056(b)(7)(B)(ii)(I), and petitioner's diversionary attempt to steer us into other provisions is unavailing.

Our conclusion that petitioner has failed to satisfy the provisions of section 2056(b)(7)(B)(ii)(I) renders unnecessary our consideration of respondent's alternate contentions under section 2056(b)(7)(B)(ii)(II). Because the surviving spouse does not have a qualifying income interest for life,

petitioner is not entitled to a marital deduction under section 2056(b)(7).

*Decision will be entered under Rule 155.*