# United States Tax Court

162 T.C. No. 9

ESTATE OF SALLY J. ANENBERG, DONOR, DECEASED, STEVEN B. ANENBERG, EXECUTOR AND SPECIAL ADMINISTRATOR, Petitioner(s)

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent

————————

Docket No. 856-21.                                   Filed May 20, 2024.

————————

S and her husband, D, established a family trust. After D's death in 2008, property held in the family trust, including shares in S and D's company (C), passed to marital trusts in which S held an income interest for life and D's children held contingent remainder interests. A qualified terminable interest property (QTIP) election was made on D's estate tax return for the property passing to the marital trusts under I.R.C. § 2056(b)(7), and D's estate claimed a corresponding marital deduction with respect to the QTIP.

In March 2012, with the consent of D's children and S, a state court terminated the marital trusts, and all of the underlying property held by those trusts was distributed to S. After S made an intervening gift of a portion of the C shares to D's children in August 2012, S sold the remaining C shares from the marital trusts to D's children and grandchildren in September 2012 for interest-bearing promissory notes for the purchase price of the C shares. S filed a gift tax return for 2012 and, in relevant part, reported gift tax only for the August 2012 gift of C shares to D's children. Sometime later, S passed away.

R examined S's 2012 gift tax return and issued a Notice of Deficiency to S's estate (E) determining that the termination of the marital trusts and sale of the C shares for promissory notes was a disposition of S's qualifying income interest for life in QTIP under I.R.C. § 2519 and that E is liable for gift tax on the value of the QTIP minus the value of S's qualifying income interest for life. R also determined an accuracy-related penalty. A timely Petition for redetermination of the deficiency and penalty followed.

E filed a Motion for Partial Summary Judgment maintaining that (1) the termination of the marital trusts and distribution of QTIP to S did not result in a taxable gift and (2) neither did S's sale of the C shares in exchange for promissory notes.

R filed a competing Motion for Partial Summary Judgment in effect arguing for the opposite conclusions.

*Held*: Assuming there was a transfer of property under I.R.C. § 2519 when the marital trusts were terminated, E is not liable for gift tax under I.R.C. § 2501 because S received back the interests in property that she was treated as holding and transferring under I.R.C. §§ 2056(b)(7)(A) and 2519 and made no gratuitous transfer, as required by I.R.C. § 2501.

*Held, further*, E is not liable for gift tax on the sale of C shares for promissory notes because after the termination of the marital trusts S's qualifying income interest for life in QTIP terminated and I.R.C. § 2519 did not apply to the sale.

*Held, further*, E's Motion for Partial Summary Judgment will be granted.

*Held, further*, R's Motion for Partial Summary Judgment will be denied.

————

*John W. Porter*, *Keri D. Brown*, and *Tyler R. Murray*, for petitioner.

*Randall L. Eager*, *William Benjamin McClendon*, *Richard C. Mills III*, and *Randall S. Trebat*, for respondent.

OPINION

TORO, *Judge*:  In this gift tax case, we are called upon to interpret complex provisions concerning the taxation of transfers between spouses.  For many years, Congress has treated spouses as a single economic unit for estate and gift tax purposes.  As an example, marital gifts between spouses generally are not subject to the gift tax.  *See* I.R.C. § 2523(a).[1]  And when one spouse dies, any assets passing to the surviving spouse generally are not subject to the estate tax, because their value may be deducted from the decedent's gross estate (marital deduction).  *See* I.R.C. § 2056(a).  Thus, transfer taxes on marital assets typically are deferred until the death of the surviving spouse—that is, until the value of the assets leaves the marital unit.  *See Estate of Morgens v. Commissioner*, 133 T.C. 402, 410 (2009), *aff'd*, 678 F.3d 769 (9th Cir. 2012).

But this treatment is subject to exceptions.  For example, the marital deduction generally is unavailable for a temporary interest (such as a lifetime interest) passed to a surviving spouse.  *See* I.R.C. § 2056(b).  This rule is designed to prevent the value of the interest from escaping tax altogether, first by being deducted from the decedent's gross estate and then (as in the case of a lifetime interest) terminating before its inclusion in the surviving spouse's estate.

Congress has, however, provided an option for taxpayers seeking to bequeath temporary interests to their spouses while still taking advantage of the marital deduction.  Such circumstances are governed by the "qualified terminable interest property" (QTIP) regime.  I.R.C. § 2056(b)(7).  The QTIP rules permit the estate of a decedent who leaves a qualifying lifetime property interest to a surviving spouse—often while leaving the remainder interest to the decedent's children—to take

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

the marital deduction for the full value of the QTIP.[2] For these purposes, the rules create a legal fiction under which the surviving spouse is treated as receiving all of the QTIP, when in reality the surviving spouse has acquired only a lifetime income interest in that property.

Here we must decide what happens when taxpayers subject to the QTIP regime take steps to conform their actual legal arrangements to the regime's legal fiction. Specifically, the parties' Cross-Motions for Partial Summary Judgment address the treatment of interests in property designated to be treated as QTIP when Alvin Anenberg (Alvin), the husband of Sally J. Anenberg (Sally), passed away. The underlying property was held in trust. Following Alvin's death, Sally obtained a qualifying income interest for life, and, upon her death, the remainder interests in the corpus would contingently go to trusts for the benefit of Alvin's children. But eventually, with the consent of both Alvin's children and Sally, the trusts holding the underlying property were terminated by a state court and all the property held by the trusts was distributed to Sally, putting her in the position she would have been in if all that property had originally passed from Alvin to her. Sally later gifted and sold different pieces of the underlying property to Alvin's children and grandchildren. Eventually, Sally passed away, leaving the gift tax consequences of these transactions to be resolved by her estate (Estate).

In his Motion, the Commissioner of Internal Revenue (Commissioner) argues that, under section 2519, the transactions we just described resulted in gift tax liability for Sally. The Estate disagrees in its own Motion. For reasons we describe further below, we agree with the Estate.[3] We will therefore grant partial summary judgment in favor of the Estate and deny the Commissioner's Motion.

*Background*

The following facts are derived from the parties' pleadings and Motion papers, the First, Second, and Third Stipulations of Fact, and

---

[2] The estate must make a QTIP election and meet certain other requirements, as described further below.

[3] The parties also dispute whether the period of limitations for assessing gift tax for the relevant year (2012) remains open considering the disclosures made on Sally's 2012 gift tax return. But, given our decision on the merits, we need not address this issue.

their attached Exhibits.  They are stated solely for the purpose of ruling on the Motions before us and not as findings of fact in this case.  *See Rowen v. Commissioner*, 156 T.C. 101, 103 (2021) (reviewed).  Sally resided in California when she died.  Steven B. Anenberg (Steven) is the executor of the Estate and, in his capacity as the Trustee of a survivor's trust, a successor in interest to Sally.[4]  He lived in California when the Petition was filed.

Sally was married to Alvin.  Alvin had two sons from a prior marriage:  Steven and Neil R. Anenberg (Neil).  Alvin also had five grandchildren.

In 1971, Sally, Alvin, and an unrelated third party formed the Al-Sal Oil Company (Al-Sal).  In time, Alvin and Sally came to own 100% of the shares of Al-Sal.  Al-Sal owned and operated gas stations, principally in Los Angeles.  Steven, Neil, and one of Alvin's grandchildren became more involved in the company as it grew, ultimately taking on corporate leadership roles.

In 1987, Sally and Alvin formed the Anenberg Family Trust, a revocable trust.  Among the assets held by the Anenberg Family Trust were 100% of the shares of Al-Sal.  The Anenberg Family Trust provided for the creation of various subtrusts upon Alvin's death, including two marital trusts (Marital Trusts).  It also provided the trustee of the Marital Trusts with discretion to elect to treat certain property held in the Marital Trusts as QTIP under section 2056(b)(7) and claim a corresponding marital deduction.

In March 2008, Alvin passed away, survived by Sally, his children, and his grandchildren.  As a result of Alvin's passing, various assets from the Anenberg Family Trust passed to the Marital Trusts, including 199 shares of Al-Sal (out of 400 total outstanding shares), representing a 49.75% interest in the company.[5]  Additionally, some cash and a 50% interest in Sally and Alvin's home passed to the Marital Trusts.  In relevant part, the Anenberg Family Trust directed that all income from the Marital Trusts be paid out to Sally at least annually

---

[4] We recognized Steven as Special Administrator for purposes of the gift tax issues in this case.

[5] The remaining 201 shares of Al-Sal (or 50.25% of the company) were distributed from the Anenberg Family Trust to another subtrust created for Sally's benefit.  Later in 2008, a 5% interest in Al-Sal was transferred from this other subtrust to an irrevocable trust created for Sally.

and that the trustee distribute corpus to Sally as the trustee "deem[ed] necessary" for Sally's support. Trusts created for the benefits of Steven and Neil had contingent remainder interests in the corpus of the Marital Trusts. Steven was the trustee of the Marital Trusts.

In 2009, Steven, as the executor of Alvin's estate, filed Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return. On the return, the estate elected to treat the property in the Marital Trusts as QTIP under section 2056(b)(7). Alvin's estate then claimed a corresponding marital deduction for the value of the property.

In October 2011, Steven, in his capacity as trustee of the Marital Trusts, petitioned the Superior Court of California for the Central District of the County of Los Angeles (Superior Court) to terminate the Marital Trusts pursuant to California Probate Code § 15403 (West 2011), which provides for the termination of irrevocable trusts by consent of all beneficiaries upon the filing of a petition to a court.[6] The petition also sought "outright" distribution of the assets of the Trusts to Sally. Stipulation of Facts Ex. 6-J, at 5. In relevant part, Steven represented in the petition that he "anticipates receiving consents to the termination of the Marital Trust[s] from the surviving Settlor [Sally], Trustee [Steven], and all beneficiaries (current and contingent)." Stipulation of Facts Ex. 6-J, at 6.[7]

In March 2012, the Superior Court issued an order approving the petition to terminate the Marital Trusts. As of March 2, 2012, the fair market value of the Marital Trusts' property was $25,450,000, and the fair market value of Sally's income interest was $2,599,463. The Superior Court's order stated that, "[o]n proof made to the satisfaction of the Court, the Court finds that all notices of hearing have been given as required by law and that all allegations in the petition are true." Stipulation of Facts Ex. 16-J, at 1. The Superior Court then terminated

---

[6] At all times relevant to this case, California Probate Code § 15403(a) provided that "if all beneficiaries of an irrevocable trust consent, they may compel modification or termination of the trust upon petition to the court."

[7] Also in October 2011, Al-Sal was recapitalized to create two classes of shares—voting and nonvoting. Before the recapitalization, as already noted, there were 400 shares in Al-Sal. After the recapitalization, there were 400 voting shares and 39,600 nonvoting shares. Of the post-recapitalization shares, the Marital Trust held 199 voting shares and 19,701 nonvoting shares. This is equal to a 49.75% interest in the voting shares (199 / 400 = 0.4975) and a 49.75% interest in the nonvoting shares (19,701 / 39,600 = 0.4975) of Al-Sal. The remaining 50.25% of Al-Sal shares remained in Sally's other trusts.

the Marital Trusts and ordered that Steven, as trustee, "is directed to transfer all assets of [the Marital Trusts] to Sally." Stipulation of Facts Ex. 16-J, at 2. As a result of the termination of the Marital Trusts, Sally received 199 voting shares and 19,701 nonvoting shares in Al-Sal, among other assets.[8]

In August 2012, Sally made a gift to each of the trusts of Steven and Neil of some of the Al-Sal shares she received upon the termination of the Marital Trusts. The fair market value of each of these gifts for federal gift tax purposes was $1,632,622.

In September 2012, Sally sold virtually all of her remaining Al-Sal shares (including the shares from the Marital Trusts and shares from one or both of her other trusts) to various trusts created for the benefit of Alvin's children and grandchildren. In return, she received nine-year promissory notes in amounts equal to the value of the Al-Sal shares and bearing annual interest at the applicable federal rate.[9] These promissory notes were secured by interests in the Al-Sal shares and were partially guaranteed. The promissory notes were payable in installments and "[a]ll outstanding principal and accrued and unpaid interest" on the promissory notes was to be "paid on September 1, 2021."

For the 2012 tax year, Sally timely filed Form 709, United States Gift (and Generation-Skipping Transfer) Tax Return. On the gift tax return, she reported the gifts of Al-Sal shares she made to Steven and Neil. She also took the position that the September 2012 sales of the Al-Sal shares to the various trusts for Alvin's heirs did not result in gift tax.

The Commissioner examined Sally's 2012 gift tax return. On December 1, 2020, he issued a Notice of Deficiency to Sally's Estate as Sally died in 2016. The Commissioner determined that the Estate was liable for a gift tax deficiency of more than $9 million as a result of the termination of the Marital Trusts and the subsequent sales of the Al-Sal shares. The Commissioner also determined an accuracy-related penalty of over $1.8 million.

---

[8] While the parties stipulated that Sally received a 48.75% interest in Al-Sal, our review of the record indicates that she actually received a 49.75% interest in Al-Sal. *See supra* note 7. Sally also received cash and a 50% interest in her home.

[9] The parties agree that the applicable federal rate at the time was 0.84%.

A timely Petition for redetermination by this Court followed. The Commissioner answered the Petition and amended his Answer twice. In his second amendment, the Commissioner alleged for the first time that the termination of the Marital Trusts by itself was a disposition of Sally's qualifying income interest for life in the QTIP and that she is liable for gift tax as a result of that disposition.

The Estate filed a Motion for Partial Summary Judgment on May 4, 2023, asking us to determine "that (i) the termination of the Marital Trusts and the distribution of the assets of the Marital Trusts to Sally did not result in a deemed gift under [section] 2519; [and that] (ii) Sally's sale of the Al-Sal shares received from the Marital Trusts in exchange for promissory notes did not result in a deemed gift under [section] 2519." Pet'r's Mot. Summ. J. 3. The Commissioner filed his own Motion for Partial Summary Judgment on July 7, 2023, asking us in effect to reach the opposite conclusions. After briefing was completed, we held a hearing on the Motions on February 21, 2024.

*Discussion*

I.    *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(a)(2); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the adverse party. *Sundstrand Corp.*, 98 T.C. at 520. The parties agree that summary adjudication is appropriate here.

II.   *General Legal Principles*

A.    *The Marital Deduction*

Upon the death of a citizen or resident of the United States, section 2001(a) imposes tax on the taxable estate transferred to the decedent's heirs. In computing the amount of the taxable estate, the value of property passing from the decedent to his or her surviving spouse is generally deductible. *See* I.R.C. § 2056(a), (b)(7); Treas. Reg. § 20.2056(a)-1(a). The policy behind the marital deduction is that

property passes untaxed from the first spouse to die to the surviving spouse, but is then included in the estate of the surviving spouse. *See Estate of Letts v. Commissioner*, 109 T.C. 290, 295 (1997), *aff'd*, 212 F.3d 600 (11th Cir. 2000) (unpublished table decision). The marital deduction does not eliminate or reduce the tax on the transfer of marital assets out of the marital unit, but instead permits deferral until the death of or gift by the surviving spouse. *See Estate of Morgens*, 133 T.C. at 410.

Ordinarily a marital deduction is not allowed for terminable interest property passing from the decedent to the surviving spouse (terminable interest rule). *See* I.R.C. § 2056(b). A terminable interest is an interest passing from the decedent to the surviving spouse that will end on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur. *See* I.R.C. § 2056(b)(1). The terminable interest rule denies a marital deduction if (1) an interest passing to the surviving spouse is a terminable interest, (2) an interest in such property passes from the decedent to someone other than the surviving spouse for less than full and adequate consideration in money or money's worth, and (3) a third person will possess or enjoy the property after the termination or failure of the interest passing to the surviving spouse. *See* I.R.C. § 2056(b)(1). The purpose of the terminable interest rule is to deny the marital deduction for transfers between spouses if the transfer has been structured to avoid estate tax when the surviving spouse dies. *See Estate of Morgens*, 133 T.C. at 410; *Estate of Novotny v. Commissioner*, 93 T.C. 12, 16 (1989).

B.      *QTIP Regime*

Section 2056(b)(7) provides an exception to the terminable interest rule for QTIP. *See Estate of Morgens v. Commissioner*, 678 F.3d at 771 ("The QTIP [regime] is an exception to an exception to an exception."). The provision allows a marital deduction for QTIP even though the surviving spouse receives only an income interest and has no control over the ultimate disposition of the property. *See id.* In other words, under section 2056(b)(7), the decedent may pass to the surviving spouse an income interest in property for the spouse's lifetime while still being permitted to deduct the full value of the property (not just the value of the income interest) from the decedent's taxable estate. After the death of the surviving spouse, the property passes to beneficiaries designated by the first spouse to die. *See Estate of Morgens v. Commissioner*, 678 F.3d at 771.

Three requirements must be met for terminable interest property to qualify as QTIP: (1) the property must pass from the decedent, (2) the surviving spouse must have a qualifying income interest for life[10] in the property, and (3) the executor of the estate of the first spouse to die must make an affirmative election to designate the property as QTIP. *See* I.R.C. § 2056(b)(7)(B). For these purposes, section 2056(b)(7) creates a legal fiction under which the surviving spouse is treated as receiving all of the QTIP passing from the deceased spouse, when in reality the surviving spouse has acquired only a lifetime income interest in that property. *See* I.R.C. § 2056(b)(7)(A)(ii); *see also Estate of Sommers v. Commissioner*, 149 T.C. 209, 223–24 (2017). Through this fiction, section 2056(b)(7) allows the decedent's estate to take full advantage of the marital deduction for that property under section 2056(a). *See* I.R.C. § 2056(b)(7)(A)(i); *Estate of Morgens v. Commissioner*, 678 F.3d at 771 ("The underlying premise of the QTIP regime is that the surviving spouse is deemed to receive and then give the entire QTIP property, rather than just the income interest. The purpose of the QTIP regime is to treat the two spouses as a single economic unit with respect to the QTIP property while still allowing the first-to-die spouse to control the eventual disposition of the property.").

Other Code provisions continue the fiction that the surviving spouse owns the QTIP outright to ensure that, if not consumed by the surviving spouse during her lifetime, the QTIP ultimately is subject to either the estate or gift tax. *See Estate of Sommers*, 149 T.C. at 223. Specifically, section 2044 requires that, upon the surviving spouse's death, the value of her gross estate include the value of any QTIP.[11] And as a corollary, section 2519 addresses dispositions of a qualifying income interest for life in any QTIP during the surviving spouse's lifetime, triggering potential gift tax in certain circumstances. Operating together, these provisions generally mean that a QTIP election produces the same tax outcome that the marital deduction would have if the surviving spouse in fact owned the QTIP—namely, deferral until the surviving spouse dies or conveys his or her interest in the QTIP by gift.

---

[10] Section 2056(b)(7)(B)(ii) provides that the surviving spouse has a qualifying income interest for life if the surviving spouse is entitled to all income from the property, payable annually or more frequently, or has a usufruct interest for life in the property, and generally no person has the power to appoint any part of the property to any person other than the surviving spouse.

[11] The estate of the surviving spouse may recover from QTIP recipients the amount by which the surviving spouse's estate tax is increased by the inclusion of the QTIP in the estate. *See* I.R.C. § 2207A(a).

*See Estate of Morgens*, 133 T.C. at 410 (describing the effects of the marital deduction); *Estate of Novotny*, 93 T.C. at 16–17 ("To the extent it applies, the marital deduction results in property in a marital unit being subject to estate tax once, not twice.").

Of particular relevance here is section 2519, addressing dispositions of QTIP during the surviving spouse's lifetime. In relevant part, section 2519 provides as follows:

> Sec. 2519(a). General rule.—
> For purposes of this chapter [imposing the gift tax] and chapter 11 [imposing the estate tax], any disposition of all or part of a qualifying income interest for life in any [QTIP] shall be treated as a transfer of all interests in such [QTIP] other than the qualifying income interest.

Accordingly, for gift and estate tax purposes, section 2519 treats any disposition of the surviving spouse's income interest in QTIP as if the surviving spouse transferred 100% of the remainder interests in QTIP.[12] In this case, we consider section 2519 in the gift tax context.

C.    *Gift Tax Regime*

The Code "taxes 'the transfer of property by gift.'" *United States v. Irvine*, 511 U.S. 224, 232 (1994). The gift tax is imposed by section 2501(a)(1). As relevant here, it provides: "A tax, computed as provided in section 2502, is hereby imposed for each calendar year on the transfer of property by gift during such calendar year by any individual . . . ." Under section 2502(a), the gift tax is computed on the amount of a taxpayer's "taxable gifts" for current and preceding periods. Section 2503(a), in turn, defines "taxable gifts" to mean "the total amount of gifts made during the calendar year, less [certain] deductions."

The gift tax generally applies "whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible." I.R.C. § 2511(a). When the gift is made in property, the amount of the gift is the value of the property at the date of the gift. *See* I.R.C. § 2512(a). The Code also makes clear that "[w]here property is transferred for less than an adequate and full consideration in money or money's worth," the value

---

[12] The gift tax treatment of the surviving spouse's qualifying interest for life is determined separately under section 2511(a). *See* Treas. Reg. § 25.2519-1(a), (c).

of the transferred property less the value of the consideration is deemed to be a gift.  I.R.C. § 2512(b).

As the foregoing provisions show, a transfer *by gift* is a foundation for the imposition of gift tax.  But, despite the Code's liberal use of the term "gift" throughout the relevant provisions, it is not statutorily defined.  Consistent with the common understanding of the term, however, the Supreme Court has described "gift in the statutory sense . . . [as] proceed[ing] from a 'detached and disinterested generosity' . . . 'out of affection, respect, admiration, charity or like impulses.'" *Commissioner v. Duberstein*, 363 U.S. 278, 285 (1960) (first quoting *Commissioner v. LoBue*, 351 U.S. 243, 246 (1956); and then quoting *Robertson v. United States*, 343 U.S. 711, 714 (1952)).  And our Court and the governing regulations have explained transfers in exchange for full and adequate consideration are not gifts.  *See, e.g.*, *Estate of Redstone v. Commissioner*, 145 T.C. 259, 269 (2015); *see also* Treas. Reg. § 25.2511-1(g)(1) ("The gift tax is not applicable to a transfer for a full and adequate consideration in money or money's worth . . . .").

III.    *The Parties' Dispute*

The parties agree that, following Alvin's death, Sally owned a qualifying income interest for life in QTIP (including the lifetime income interest in the Al-Sal shares).  But they disagree on the application of section 2519 to Sally's 2012 transactions with respect to the Al-Sal shares.

Specifically, the Commissioner contends that Sally disposed of her qualifying income interest for life in the QTIP within the meaning of section 2519 at one of two times: (1) when Sally agreed to the termination of the Marital Trusts and accepted the Marital Trusts' distribution of a complete ownership interest in all the Trusts' assets, including the Al-Sal shares or (2) when Sally, having accepted the shares from the Marital Trusts, sold them in exchange for promissory notes.  In the Commissioner's view, either one of these two events was a "disposition" sufficient to trigger section 2519.  The Commissioner therefore contends that Sally is treated as transferring the full value of the QTIP (the Al-Sal shares) less the value of her qualifying income interest as a gift, resulting in a gift tax liability of more than $9 million and related penalties.

Unsurprisingly, the Estate disagrees with the Commissioner, arguing that neither event was a disposition within the meaning of

section 2519. In the Estate's view, the 2012 transactions, taken together, amount to no more than a permissible conversion of Sally's qualifying income interest for life in the QTIP into an equivalent interest in other property. Under the applicable regulations, the Estate says, such conversions are not a disposition under section 2519. And in the alternative, the Estate argues, even if there was a disposition when Sally received the Trust's assets or later sold the shares, no gift tax is due because Sally did not make a gift. Instead, Sally received full and adequate consideration for the property she was deemed to transfer.

As we explain below, we agree that Sally did not make a gift as the Commissioner contends and therefore resolve the Motions in the Estate's favor.

A.      *Receipt of the Al-Sal Shares*

There is some question as to whether the termination of the Marital Trusts (through which Sally held her qualifying income interest for life in the Al-Sal shares) and the distribution of the Al-Sal shares to Sally by order of the Superior Court was a disposition within the meaning of section 2519(a).[13] *See, e.g.*, *Rome I, Ltd. v. Commissioner*, 96 T.C. 697, 704 (1991) (discussing the plain meaning of the term "disposition"); *see also Disposition*, *Black's Law Dictionary* (5th ed. 1979) ("Act of disposing: transferring to the care of possession of another. The parting with, alienation of, or giving up property.").[14] But we need not

---

[13] The parties' Motion papers focus on the Al-Sal shares, and we do the same here. However, the same analysis would apply with respect to Sally's other QTIP (i.e., the Marital Trusts' other assets).

[14] On the one hand, for the Marital Trusts to be terminated, Sally had to consent to relinquish her interests in the Marital Trusts. And under state law those interests represented separate property rights. Although the relinquishment of those interests was conditioned on Sally's receiving all of the property the Marital Trusts held, one might think of the elimination of the initial interests as an "act of disposing" or as "parting with" or "giving up" the separate property rights. Thus, one could view Sally's agreement to termination as a disposition, as the Commissioner argues. On the other hand, given that Sally agreed to relinquish the interests in the Marital Trusts only because she was assured she would receive all of the underlying property outright, one could also view Sally's agreement to the termination of the Marital Trusts as resulting in no disposition, because after the termination of the Marital Trusts she held in her own name the full bundle of sticks, *see United States v. Craft*, 535 U.S. 274, 278 (2002) ("A common idiom describes property as a 'bundle of sticks'—a collection of individual rights which, in certain combinations, constitute property."), with respect to the underlying property, including the right to receive the income generated by the property.

resolve this question because, even if the termination of the Marital Trusts and distribution of the Al-Sal shares was a disposition under section 2519(a), we conclude it did not result in gift tax liability for Sally.

As we have discussed, section 2519 provides that, if Sally disposed of all or part of her qualifying income interest for life in the Al-Sal shares, then, for purposes of determining her gift tax liability, she is treated as transferring all the interests in the Al-Sal shares other than her qualifying income interest.[15]  So far, so good.

A transfer alone, however, is insufficient to create a gift tax liability.  Rather, section 2501 tells us that gift tax applies "on the *transfer* of property *by gift* during [the] calendar year."  I.R.C. § 2501(a)(1) (emphasis added); *Irvine*, 511 U.S. at 232; *see also Estate of Howard v. Commissioner*, 910 F.2d 633, 636 (9th Cir. 1990) (construing the provisions governing QTIPs and observing that "[i]n a statute so carefully crafted every difference counts"), *rev'g* 91 T.C. 329 (1988).  And, as the Supreme Court observed in *Irvine*, "[w]e have repeatedly emphasized that [the Code's] comprehensive language was chosen to embrace all *gratuitous* transfers." *Irvine*, 511 U.S. at 232–33 (emphasis added); *id.* at 235 ("[T]he capacious language of Internal Revenue Code §§ 2501(a)(1) and 2511(a) . . . encompasses all *gratuitous* transfers of property and property rights of significant value." (Emphasis added.)).  In other words, a gratuitous transfer—not just a transfer—is required to impose gift tax.

Applying these principles to this case is simple.  If we assume that Sally's relinquishment of her interest in the Marital Trusts in exchange for the Al-Sal shares was a disposition, section 2519(a) treats her as having transferred away (but not necessarily by gift) all the interests in the Al-Sal shares other than her qualifying income interest.  *See also* Treas. Reg. § 25.2519-1(a).  The value of the deemed transfer is the fair market value of the shares, less Sally's qualifying income interest.  *See id.* para. (c)(1).  To determine whether Sally is liable for any gift tax on this deemed transfer, we must consider whether the transfer was also a gift by Sally.

This task turns out to be straightforward.  To determine whether Sally made a gift, in connection with the deemed transfer, we compare what she had before and after the transaction.  When doing so, we find

---

[15] In this scenario, no deeming rule is necessary with respect to the qualifying income interest, because it is transferred in fact.

that, after the transaction, Sally had full ownership of the Al-Sal shares. As a result of the Superior Court's order, she received free and clear the underlying property that section 2056(b)(7) deemed her to have received from Alvin to start with and with respect to which (we assume) section 2519(a) deemed her to have transferred remainder interests upon the termination of the Marital Trusts. Put another way, Sally's deemed transfer of the remainder interests in the Al-Sal shares held in trust (other than her qualifying income interest) resulted in her actual receipt of all the Al-Sal shares unencumbered (other than those attributable to her qualifying income interest). At the end of the day, she gave away nothing of value as a result of the deemed transfer. Accordingly, the termination of the Marital Trusts did not result in any "gratuitous transfers" by Sally, deemed or otherwise. *See Irvine*, 511 U.S. at 232. Because there was no gratuitous transfer, she made no gift. A long line of cases echoes this principle. *See, e.g.*, *Turman v. Commissioner*, 35 T.C. 1123, 1129 (1961) (holding that a surviving spouse made no gift when she took under her husband's will and thereby gave up her one-half interest in their community property because the value of property she gave up (the one-half interest) was less than what she received in return (a life estate in all the community property)); *Siegel v. Commissioner*, 26 T.C. 743, 747 (1956) (stating on similar facts that "[i]f [the taxpayer] received more than she surrendered then, of course, no gift has been made"), *aff'd*, 250 F.2d 339 (9th Cir. 1957).

A conclusion that Sally made a taxable gift in the circumstances here would be difficult to reconcile with the regulations under section 2511. Those regulations explain that the gift tax "is an excise upon [her] act of making the transfer [and] is measured by the value of the property passing from the donor." Treas. Reg. § 25.2511-2(a). The regulations further observe that a "gift is complete" "[a]s to any property, or part thereof or interest therein, of which the donor has so parted with dominion and control as to leave in [her] no power to change its disposition, whether for [her] own benefit or for the benefit of another." *Id.* para. (b). "But if upon a transfer of property (whether in trust or otherwise) the donor reserves any power over its disposition, the gift may be wholly incomplete, or may be partially complete and partially incomplete, depending upon all the facts in the particular case." *Id.* Tying these principles together, the regulations note that "in

every case of a transfer of property subject to a reserved power, the terms of the power must be examined and its scope determined." *Id.*[16]

If one examines "all the facts in [Sally's] particular case," as the regulations contemplate, it would be difficult to avoid concluding (as we already have) that she made no taxable gift. First, consideration of all the facts shows that, even if we deem Sally to have transferred the remainder interests, no value would appear to have passed from her to anyone else because she ultimately received all the property held by the Marital Trusts as part of the same transaction, leaving nothing on which the "excise" could operate. *See id.* para. (a). Second, Sally's decision to agree to the termination of the Marital Trusts was conditioned on her receipt of the property held by the Marital Trusts. While (we assume) that decision could be viewed as a disposition that is treated as a transfer under section 2519, it is not clear how Sally could be viewed as having "parted with dominion and control as to leave in [her] no power to change its disposition." Treas. Reg. § 25.2511-2(b). Quite to the contrary, after the termination of the Marital Trusts, she had full control over the disposition of the assets previously held in trust. Accordingly, under the regulations, any gift by Sally would appear to be viewed as wholly incomplete. *See also Estate of Sanford v. Commissioner*, 308 U.S. 39, 43 (1939) ("[A] retention of control over the disposition of the trust property, whether for the benefit of the donor or others, renders the gift incomplete until the power is relinquished whether in life or at death."); *Robinson v. Commissioner*, 675 F.2d 774, 777 (5th Cir. 1982) ("There can be no completed gift before the donor surrenders dominion and control of the subject matter of the gift." (quoting 4 Jacob Rabkin & Mark H.

---

[16] The regulations then offer an illustration:

[I]f a donor transfers property to another in trust to pay the income to the donor or accumulate it in the discretion of the trustee, and the donor retains a testamentary power to appoint the remainder among his descendants, *no portion of the transfer is a completed gift*. On the other hand, if the donor had not retained the testamentary power of appointment, but instead provided that the remainder should go to X or his heirs, the entire transfer would be a completed gift. However, if the exercise of the trustee's power in favor of the grantor is limited by a fixed or ascertainable standard (see paragraph (g)(2) of § 25.2511-1), enforceable by or on behalf of the grantor, then the gift is incomplete to the extent of the ascertainable value of any rights thus retained by the grantor.

Treas. Reg. § 25.2511-2(b) (emphasis added).

Johnson, *Federal Income, Gift and Estate Taxation* § 51.04B(1) (1982)), *aff'g* 75 T.C. 346 (1980).

Treasury Regulation § 25.2511-2(c) points the same way. It provides that "[a] gift is incomplete in every instance in which a donor reserves the power to revest the beneficial title to the property in [herself]." Here, in agreeing that the Marital Trusts be terminated, Sally was assured that she would receive the assets held by the trusts. While not cast in the form of a reserved power, one might view the arrangement presented to the Superior Court as amounting to Sally's agreeing to part with her qualifying income interest for life (and to the deemed transfer of the remainder interests in the QTIP) on the condition that she was reserving the power to revest title in the property in herself, a power that was promptly exercised upon the termination of the Marital Trusts.

Consideration of section 2512 further confirms the conclusion that Sally did not make a taxable gift. In explaining how gifts should be valued for purposes of the gift tax, section 2512(b) provides that, if property is transferred for less than full and adequate consideration, then the amount by which the property's value exceeds the value of the consideration is a gift. A necessary corollary of this rule is that no taxable gift results to the extent the value of transferred property is equal to or less than the value of the consideration received. *See, e.g.*, *Estate of Redstone*, 145 T.C. at 269.

Considering the circumstances that existed when the Superior Court directed the trustee of the Marital Trusts to transfer all of the assets of those trusts to Sally free and clear, we see the following. Before the termination of the Marital Trusts, Sally held a qualifying income interest for life in the QTIP. She was deemed for estate and gift tax purposes to hold the remainder interests as well. But these interests, even when considered together, did not equate to unencumbered ownership. She was not free to do what she wished with the QTIP, which was held in the trusts. After the Superior Court order, Sally received the QTIP free of any trust restrictions. In these circumstances, to the extent section 2519 viewed Sally as transferring away the interests in property that the QTIP regime treated her as holding in the first place, it is hard to understand why Sally would not have received full and adequate consideration in return when she was also at the receiving end of the transfer of the property unencumbered. Before the Marital Trusts terminated, she actually held an income interest in the Marital Trusts' property valued at approximately $2.6 million, but was

deemed to hold the entirety of the Marital Trusts' property valued at approximately $25.5 million. Immediately after the Marital Trusts terminated and (we assume) Sally was deemed to transfer the residual value of the Marital Trusts' property (approximately $22.9 million), she actually held assets valued at approximately $25.5 million. Sally could thus be viewed as fully compensated for whatever interest she was deemed to transfer.[17]

In sum, when looking for a gratuitous transfer in the circumstances here, one comes up short. Simply put, Sally made no gift.[18] So, while (we assume) there was a transfer, there was no transfer of property *by gift*, a predicate for the Code's imposition of gift tax. *See* I.R.C. § 2501(a)(1).

B.    *Exchange of the Al-Sal Shares for Promissory Notes*

Neither does the gift tax apply to Sally's subsequent sale of the Al-Sal shares in exchange for promissory notes. For at least two reasons, that transaction could not have triggered section 2519(a).

First, if the termination of the Marital Trusts and distribution of the Trusts' assets to Sally constituted a disposition of her qualifying income interest for life in QTIP, as we assume above, then that event would already have triggered section 2519. Thus, section 2519 would no longer apply at the time Sally sold the shares.[19] Essentially, Sally would have already satisfied the requirements of the QTIP regime, and her future transactions in the Al-Sal shares would be covered by the ordinary estate and gift tax rules rather than the QTIP regime.

Second, even if the termination of Marital Trusts and the distribution of QTIP to Sally was not a disposition, Sally's qualifying income interest for life in the QTIP would still have ceased to exist at

---

[17] The result would be different if Sally had received only the value of her qualifying income interest for life when the Marital Trusts terminated. In such a case, Sally would have been left with assets valued at approximately $2.6 million. The gratuitous transfer under section 2519 would be plain (although deemed) and would total approximately $22.9 million ($25.5 million of assets deemed held before the termination less her $2.6 income interest).

[18] We express no view on whether the other beneficiaries of the Marital Trust could be treated as making a gift to Sally for gift tax purposes.

[19] The qualifying disposition would have already occurred, and there appears to be no dispute that a qualifying disposition occurs only once.

that point, eliminating the mechanism needed to trigger section 2519 in the future.

It is axiomatic that a surviving spouse must hold a qualifying income interest for life to implicate section 2519. Such a property interest is defined by the Code and exists only when the surviving spouse is entitled to all income from the property, payable annually or more frequently, or has a usufruct interest for life in the property, and no person (including the surviving spouse) has the power to appoint any part of the property to any person other than the surviving spouse (unless such power is exercisable only after the death of the surviving spouse). *See* I.R.C. § 2056(b)(7)(B)(ii); Treas. Reg. § 20.2056(b)-7(d)(1). When the Superior Court terminated the Marital Trusts, the property interest Sally received was outright ownership of the Al-Sal shares, not an income interest. And because the Marital Trusts terminated, the property interest Sally received was unencumbered by any restrictions that were placed on it while it was in the Trusts, including restrictions that would have limited distributions to individuals other than Sally. For these reasons, Sally no longer held a qualifying income interest for life as defined by section 2056(b)(7)(B)(ii).[20] Consequently, her sale of the Al-Sal shares for promissory notes could not trigger section 2519.[21]

### C. *The Commissioner's Arguments*

#### 1. *Checking Out of the QTIP Regime*

The Commissioner argues that, when section 2519 is triggered, the surviving spouse automatically owes gift tax on the full value of the QTIP (less the value of the qualifying income interest) regardless of what happens with the QTIP or any consideration the surviving spouse receives as part of the transfer. In other words, according to the Commissioner, "once the estate of the first spouse to die irrevocably

---

[20] The Commissioner appears to agree that Sally's qualifying income interest for life did not survive the termination of the Marital Trusts. In relevant part, he says that "[t]he Superior Court's Order unequivocally terminated the trusts which, in turn, resulted in the termination of Sally's qualifying income interest[] in those trusts," and "[o]nce the assets were distributed to Sally, the Marital QTIP Trusts and Sally's qualifying income interest[] in those trusts ceased to exist." Resp't's Memo. in Support of Cross-Summ. J. (R. Memo.) 27 (footnotes omitted).

[21] For the same reason, Sally's gifts of portions of her Al-Sal shares to trusts held for Steven and Neil in August 2012 did not trigger section 2519.

'checks-in' to the QTIP regime, there is no method to 'check-out' absent paying the deferred tax." R. Memo. 17.

In one version of this argument, the Commissioner asserts that section 2519 itself "imposes gift tax." R. Memo. 4. But of course the text of the Code makes plain that this is not the case. Instead, section 2519 deems a transfer to be one upon which section 2501 *may* impose gift tax, but only if the requirements of the latter section are met. Among those requirements is that a transfer be "by gift" to create a gift tax liability. *See* I.R.C. § 2501(a). And, as we have explained above, the facts here do not support finding a gratuitous transfer. *See supra* Part III.A.

Repeatedly, the Commissioner ignores the textual limits of section 2519(a). Specifically, the provision says only that a disposition "shall be treated as a transfer" and not that it shall be treated "as a transfer by gift" or "as a gift." Congress could have used either formulation to ensure the imposition of gift tax regardless of what happens with the QTIP or the consideration the surviving spouse receives, but it did not. And it made this choice despite the frequent use of the phrase "transfer by gift" in neighboring provisions, including in section 2501 itself. *See, e.g.*, I.R.C. § 2056A(b)(13) (treating taxable lifetime distributions from a qualified domestic trust "as a transfer by gift"); I.R.C. § 2501(a) (imposing the gift tax on "the transfer of property by gift during [the] calendar year"); I.R.C. § 6019 (requiring that "[a]ny individual who in any calendar year makes any transfer by gift" file a gift tax return, subject to certain limitations). Our interpretation of section 2519 respects this congressional choice. *See, e.g.*, *Gallardo ex rel. Vassallo v. Marstiller*, 142 S. Ct. 1751, 1759 (2022) ("[W]e must give effect to, not nullify, Congress' choice to include limiting language in some provisions but not others, see [*Russello v. United States*, 464 U.S. 16, 23 (1983)]."); *Me. Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1323 (2020) ("This Court generally presumes that 'when Congress includes particular language in one section of a statute but omits it in another,' Congress 'intended a difference in meaning.'" (quoting *Digital Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 777 (2018))).

This outcome also makes sense in context. Recall that, working together, section 2519 and section 2044 generally operate to ensure that QTIP is treated the same as nonterminable interest property (i.e., regular property) for purposes of the marital deduction—namely, not eliminating or reducing tax on the transfer of marital assets out of the marital unit, but rather permitting deferral until the death of or gift by the surviving spouse. Where, as here, a surviving spouse receives the

QTIP with respect to which she is deemed to transfer remainder interests, the value of the marital assets is preserved in her estate and will be taxed upon her death, assuming she does not consume the property or transfer it by gift at a later date. This is the same result that obtains when the marital deduction applies without regard to the QTIP regime.

The Commissioner highlights various cases, rulings, and examples from the regulations that he says require gift tax to be imposed whenever a surviving spouse disposes of her qualifying income interest in QTIP. R. Memo. 29, 31–32 (citing *Estate of Morgens v. Commissioner*, 678 F.3d at 771; *Estate of Novotny*, 93 T.C. at 18; *Estate of Kite*, T.C. Memo 2013-43; Order and Decision at 8–9, *Estate of Kite*, T.C. Memo. 2013-43 (No. 6772-08); Treas. Reg. § 25.2519-1(a), (f), (g) (examples 1 and 2); Rev. Rul. 98-8, 1998-1 C.B. 541). But in many of the sources the Commissioner cites, the surviving spouse either disposed of the entire qualifying income interest by gift (i.e., for no consideration whatsoever) or else received consideration for the value of the income interest only. *See, e.g., Estate of Morgens v. Commissioner*, 678 F.3d at 772–73 (addressing a surviving spouse who gave her income interest in QTIP to the decedent's heirs, receiving nothing in return, and was deemed to transfer the remainder interest under section 2519);[22] Treas. Reg. § 25.2519-1(g) (example 1) (treating a surviving spouse as making a gift of both the life interest and the remainder when she transferred to decedent's children for no consideration the entire interest in the personal residence in which she had been left a life estate); Treas. Reg. § 25.2519-1(g) (example 2) (treating a surviving spouse as making a gift of the remainder interest when she transferred to decedent's children the entire interest in the personal residence in which she had been left a life estate and was compensated only for her life interest). Accordingly, a straightforward application of section 2519, together with the gift tax principles we have discussed, clearly required that gift tax be imposed. Otherwise, the value of the remainder interest in QTIP would have passed out of the surviving spouse's hands (and thus out of the marital unit) without ever being subject to estate or gift tax, contrary to the policy underlying the marital deduction and QTIP rules.

---

[22] And, in *Estate of Morgens*, our Court recognized that gift tax would not necessarily be due every time section 2519 is triggered. *See Estate of Morgens*, 133 T.C. at 411 (describing how section 2207A(b) applies "[*i*]*f* gift tax is due upon the deemed transfer of the QTIP by a surviving spouse" (emphasis added)).

In another permutation of the same fact pattern, Revenue Ruling 98-8 describes a transaction in which a surviving spouse purchased the remaindermen's interest in QTIP, transferring to the remaindermen a promissory note of the value of the interest (and therefore diminishing her estate by the same amount), even though, under the Code, the surviving spouse was deemed to already own the QTIP. That transfer clearly represented a gift. As the Commissioner points out, the surviving spouse could not be viewed as purchasing with the note the remaindermen's interest because, under the QTIP regime, the remaindermen's interest was already hers.

By contrast, here Sally's receipt of the QTIP (and later the promissory notes) preserves the value of the marital assets in her hands for future gift or estate taxation. *See Estate of Novotny*, 93 T.C. at 16, 17–18; *see also* I.R.C. § 2033 ("The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death."). Thus, the authorities the Commissioner cites support a result contrary to the one he advances.[23]

The termination of the Marital Trusts is similar to an appointment of the assets of the Marital Trusts to Sally—i.e., an assignment of ownership in the assets to her. *See, e.g.*, Cal. Prob. Code § 610(f) (West 2023) (defining a "power of appointment" as "a power that enables a powerholder . . . to designate a recipient of an ownership interest in . . . property"); *see also Power of Appointment*, *Black's Law Dictionary* (5th ed. 1979) (defining a "[p]ower of appointment" as "[a] power . . . to appoint, that is, to select and nominate, the person or persons who are to receive and enjoy an estate or an income therefrom"). Perhaps in recognition that it would make little sense to impose the gift tax when property owned (or deemed owned) by the surviving spouse is distributed to her for her own use, the governing regulations provide that appointment of the QTIP to the surviving spouse is not treated as a disposition under section 2519. *See* Treas. Reg. § 25.2519-1(e) ("The exercise by any person of a power to appoint [QTIP] to the donee spouse is not treated as a disposition under section 2519, even though the donee

---

[23] In a continuation of this theme, at the February 21, 2024, hearing, the Commissioner highlighted an example from a Joint Committee report applying section 2519 to a court-ordered termination of a QTIP trust. *See* Staff of J. Comm. on Tax'n, 97th Cong., General Explanation of the Economic Recovery Tax Act of 1981, JCS-71-81, at 235–36 (J. Comm. Print 1981). But, as in the Commissioner's other examples, the surviving spouse was treated as making a gift *because* the assets in the trust were distributed proportionately to the surviving spouse *and the remaindermen*. Again, this distinction proves fatal to the Commissioner's argument.

spouse subsequently disposes of the appointed property."); *cf.* I.R.C. § 2056(b)(7)(B)(ii)(II) (providing that a surviving spouse can hold a qualifying income interest for life in QTIP only when "no person has a power to appoint any part of the property to any person *other than the surviving spouse*" (emphasis added)). As a result, no gift tax applies in the event of an appointment.[24] We see no reason to reach a contrary result here, where as a result of the Superior Court's order the Marital Trusts distributed the QTIP to Sally by analogous means.[25]

## 2.    *Treasury Regulation § 25.2519-1(a)*

The Commissioner cites Treasury Regulation § 25.2519-1(a) as confirming his view that gift tax is imposed anytime a surviving spouse disposes of a qualifying income interest in QTIP. That regulation states as follows:

> Treas. Reg. § 25.2519-1(a). In general. If a donee spouse makes a disposition of all or part of a qualifying income interest for life in any property for which a deduction was allowed under section 2056(b)(7) or section 2523(f) for the transfer creating the qualifying income interest, the donee spouse is treated for purposes of chapters 11 and 12 of subtitle B of the Internal Revenue Code as transferring all interests in property other than the qualifying income interest. For example, if the donee spouse makes a disposition of part of a qualifying income interest for life in trust corpus, the spouse is treated under section 2519 as making a transfer subject to chapters 11 and 12 of the entire trust other than the qualifying income interest for life. Therefore, the donee spouse is treated as making a gift under section 2519 of the entire trust less the qualifying income interest, and is treated for purposes of section 2036 as having transferred the entire trust corpus, including

---

[24] Indeed, at the February 21, 2024, hearing, the Estate maintained that the case could be decided simply by applying Treasury Regulation § 25.2519-1(e). In the Estate's view, the Superior Court's order that the Marital Trusts trustee "is directed to transfer all assets of said [Trusts] to Sally" should be interpreted as a court-ordered exercise of a power of appointment in favor of Sally. *See also* Pet'r's Reply to Resp't's Obj. to Pet'r's Mot. 5–7. In view of our analysis above, we need not rest our decision on this point, although we acknowledge the force of the argument.

[25] The Commissioner points out that a QTIP election is irrevocable. But Alvin's estate did not revoke its election. And our analysis applies the QTIP regime to Sally's transactions, respecting the election.

that portion of the trust corpus from which the retained income interest is payable. A transfer of all or a portion of the income interest of the spouse is a transfer by the spouse under section 2511. See also section 2702 for special rules applicable in valuing the gift made by the spouse under section 2519.

The Commissioner may be focused on the third sentence. But the third sentence does not say that transfers under section 2519(a) are always treated as gifts. Rather, it completes the example posited by the second sentence, in which the donee spouse has disposed of part of a qualifying income interest for life, presumably for no consideration or for consideration matching the value of the disposed-of partial interest. (That is why the third sentence refers to the "trust corpus" rather than "property" and the donee spouse's "retained income interest.") In the circumstance posited by the second sentence (which makes no mention of the donee spouse receiving anything in return in connection with the disposition), the third sentence correctly recognizes that the donee spouse is treated as making a gift of the entire trust less the qualifying income interest.[26]

The third sentence, however, does not state a general rule for all section 2519 purposes.[27] Rather, the general rule is found in the regulation's first sentence, which provides simply that "the donee spouse is treated . . . as *transferring* all interests in property other than the qualifying income interest." Treas. Reg. § 25.2519-1(a) (emphasis added). Other provisions of the regulations reiterate this point. *See, e.g.*, *id.* para. (c) (describing how to determine "[t]he amount treated *as a transfer* under this section" (emphasis added)).

---

[26] Similarly, "[f]or those who consider legislative history relevant," *Warger v. Shauers*, 574 U.S. 40, 48 (2014), the legislative history the Commissioner cites confirms that gift tax applies when QTIP is transferred for limited or no consideration, *see* H.R. Rep. No. 97-201, at 161 (1981), *as reprinted in* 1981-2 C.B. 352, 378 ("If the property is subject to tax as a result of the spouse's lifetime transfer of the qualifying income interest, the entire value of the property, *less amounts received by the spouse upon disposition*, will be treated as a taxable gift by the spouse under new Code sec. 2519." (Emphasis added.)).

[27] Even if the third sentence did attempt to articulate a more general rule, the Supreme Court tells us that "self-serving regulations never 'justify departing from the statute's clear text.'" *Niz-Chavez v. Garland*, 593 U.S. 155, 169 (2021) (quoting *Pereira v. Sessions*, 138 S. Ct. 2105, 2118 (2018)).

### 3. Estate of Kite

The Commissioner also makes much of *Estate of Kite*, T.C. Memo. 2013-43. In that case, we considered a surviving spouse (Mrs. Kite) who, like Sally, acquired an income interest in QTIP upon the death of her spouse. *Id.* at *36. The QTIP was held in a trust. Eventually that trust was terminated, and the entire interest in the trust property was distributed to another trust created for Mrs. Kite's benefit. *Id.* at *39. Two days later, Mrs. Kite's trust sold the entirety of the property to her spouse's children, receiving private annuity agreements in return. *Id.* at *39–40. In relevant part, the private annuity agreements were unsecured, and the first payments were not due until 10 years after the sale. *Id.* at *40. The annuities were structured in such a way that, if Mrs. Kite (who was in her 70s at the time and receiving in-home medical care) died before the first payments were due, then "her annuity interest would terminate" and the income from the annuities (which the Court determined were adequate and full consideration for the qualified terminable interest property) would no longer be part of her gross estate and would escape estate tax. *Id.* at *13. And in fact, Mrs. Kite did die before any annuity payments were made. *Id.* at *17.

On these facts and assuming the form of Mrs. Kite's transactions were respected, the value of the QTIP that was deemed to pass to Mrs. Kite (and for which a marital deduction had been taken) would have escaped estate and gift tax altogether. Observing that the form of the transaction would allow Mrs. Kite's estate to "circumvent the QTIP regime" and "avoid any transfer tax," this Court (at the Commissioner's urging) applied the substance over form doctrine to treat the transactions as one integrated transaction. *Id.* at *40–43. And, in doing so, the Court concluded that the termination of the trust and subsequent sale of property was a disposition for purposes of section 2519(a). *Estate of Kite*, T.C. Memo. 2013-43, at *41.

The case before us differs in material respects from *Estate of Kite*. To begin, the Commissioner has not asked that we apply the substance over form doctrine. Moreover, like the Commissioner's other authorities, *Estate of Kite* involved an apparent attempt to prevent estate or gift tax from ever being imposed on the residual value of the QTIP for which a marital deduction had been taken. Neither circumstance is present here, so *Estate of Kite* provides the Commissioner no help.

### 4. *No Consideration*

Citing *Commissioner v. Wemyss*, 324 U.S. 303 (1945), the Commissioner argues that, in the estate and gift tax context, "adequate and full consideration is that which replenishes, or augments, the donor's taxable estate." R. Memo. 31. We fully agree with this simple proposition. *See Commissioner v. Wemyss*, 324 U.S. at 307 ("The section taxing as gifts transfers that are not made for 'adequate and full [money] consideration' aims to reach those transfers which are withdrawn from the donor's estate." (Alteration in original.)). But the Commissioner further contends that the receipt of the Al-Sal shares could not "enhance or augment [Sally's] taxable estate" and therefore could not constitute full and adequate consideration in her hands. R. Memo. 33. With respect to this second proposition, we could not disagree more.

The Commissioner reasons that, before the termination of the Marital Trusts, the value of the Al-Sal shares was already includible in Sally's taxable estate. *See* I.R.C. § 2044. Therefore, the Commissioner concludes, Sally's later receipt of the shares could not have constituted adequate and full consideration to her, because she already was deemed to own them. The Commissioner's position amounts to wanting to have your cake and eat it too.

To take a step back, it is true that, under the QTIP regime, the value of the Al-Sal shares was includible in Sally's gross estate before the Marital Trusts were terminated and the shares were distributed. But the Commissioner urges us to conclude (and for purposes of our decision we assume) that the termination of the Marital Trusts was a disposition that triggered section 2519(a). So, when the Marital Trusts terminated, section 2519(a) deemed Sally to have transferred away all the interests in the Al-Sal shares other than her qualifying interest for life. Or, put another way, section 2519(a) deemed Sally as giving up the remainder interests that she previously was deemed to have received from Alvin. This in turn resulted in a (temporary, as we will momentarily see) diminution of her estate.

But the transaction did not stop there, and our analysis is not yet finished. The Superior Court ordered that all of the property held by the Marital Trusts be distributed to Sally. And that is what happened. Thus, promptly after Sally was deemed to have transferred away the remainder interests in the Al-Sal shares, she received right back outright ownership of the Al-Sal shares. The receipt of those shares "replenished" or "augmented" her (temporarily) diminished estate. In

analyzing the tax consequences of the deemed transfer section 2519 contemplates, we cannot ignore that, as part of the same transaction, Sally in fact wound up with the unencumbered Al-Sal shares. We therefore decline the Commissioner's invitation to decide the case by taking into account only half of the relevant transaction.[28]

The Commissioner would have us treat the circumstances here the same from a gift tax perspective as we would treat a termination of the Marital Trusts that was followed by a hypothetical distribution to Sally of the value of her qualifying income interest only, with the value of the remainder interests distributed to Steven and Neil. But the two situations are not remotely the same.[29] *See, e.g.*, *Merrill v. Fahs*, 324 U.S. 308, 311 (1945) ("The guiding light is . . . [that] '[t]he gift tax [i]s supplementary to the estate tax. The two are in *pari materia* and must be construed together.'" (quoting *Estate of Sanford v. Commissioner*, 308 U.S. at 44)).

---

[28] The Commissioner's arguments in this regard are similar to those the taxpayer offered in *Estate of Morgens*, where the taxpayer sought to take advantage of the QTIP regime while refusing to accept the consequences of the fiction the regime imposes. *See Estate of Morgens v. Commissioner*, 678 F.3d at 776 n.7 (stating that the taxpayer "ignores the underlying premise of the QTIP regime, that the entire QTIP property . . . is deemed to pass to, and then from, the surviving spouse"). Both our Court and the Ninth Circuit found the taxpayer's arguments unavailing. *See id.* ("The [taxpayer] cannot first use that favorable tax deferral (the § 2056 marital deduction) and then claim that the property never actually passed to Mrs. Morgens."); *Estate of Morgens*, 133 T.C. at 418–20 (same). We see no reason for the Commissioner's arguments to fare any better here.

[29] To reiterate, in both situations, before the termination of the Marital Trusts and distribution of the QTIP property, the fair market value of that property was $25,450,000, and the fair market value of Sally's income interest was $2,599,463. After the termination, in the case before us, Sally actually held all the interests in the property, preserving the full $25,450,000 of value in her estate for future taxation. The value of that property, in other words, did not leave the marital unit. *See Estate of Morgens v. Commissioner*, 678 F.3d at 771 ("The purpose of the QTIP regime is to treat the two spouses as a single economic unit with respect to the QTIP property . . . .").

In the second, hypothetical scenario, Sally would receive only $2,599,463 from the Marital Trusts. Thus, there would be no consideration for Sally's deemed transfer of the remainder interests. And, if gift tax were not imposed, the value of those remainder interests ($22,850,537) would have left the marital unit without ever being subject to estate or gift tax. In this situation, imposing the gift tax is appropriate and required by the Code. But, in the case before us, no such requirement exists as the value of the QTIP does not leave the marital unit.

5. *Summary*

To summarize, in each of the Commissioner's cited sources, imposing the estate or gift tax resulted in one-time taxation of the value of the remainder interests in QTIP at the time that value left (or was deemed to leave) the surviving spouse's hands. This is fully consistent with the QTIP regime and the marital deduction, which, again, do not eliminate or reduce the tax on the transfer of marital assets out of the marital unit, but rather permit deferral until the death of or gift by the surviving spouse. *See Estate of Morgens*, 133 T.C. at 410. In short, the authorities the Commissioner cites do not support his position.

IV.  *Conclusion*

For the reasons discussed above, we will grant the Estate's Motion for Partial Summary Judgment and deny the Commissioner's Motion.

To reflect the foregoing,

*An appropriate order will be issued.*

Reviewed by the Court.

KERRIGAN, FOLEY, BUCH, NEGA, PUGH, ASHFORD, URDA, COPELAND, JONES, GREAVES, MARSHALL, and WEILER, *JJ.*, agree with this opinion of the Court.